SO ORDERED: September 23, 2016.



**Robyn L. Moberly**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:

**PRIME RENTALS, LLC**,

        Debtor.

**Case No. 15-7473-RLM-11**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020
### CONFIRMING COMBINED SMALL BUSINESS
### <u>CHAPTER 11 PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT</u>

This matter is before the Court for the entry of an order confirming the *Combined*

*Small Business Chapter 11 Plan of Reorganization and Disclosure Statement* dated

June 28, 2016 [Docket No. 121], (the "<u>Plan</u>"), filed by Prime Rentals, LLC, the Debtor in

the above-captioned Chapter 11 case (the "<u>Chapter 11 Case</u>") and scheduled for a

confirmation hearing which was held on August 16, 2016 (the "Confirmation Hearing").

The Plan is attached as <u>Exhibit A</u> to this Confirmation Order.  Any capitalized term not

defined in this Confirmation Order has the definition given it in the Plan.  In making the

following findings of fact and conclusions of law and confirming the Plan, this Court considered, evaluated, and weighed the following: (i) *Certification of Ballot Report* [Docket No. 164] (the "Ballot Report"), (ii) *Amended Certification of Ballot Report* [Docket No. 171] (the "Amended Ballot Report"), (iii) *First Immaterial Modification to its Combined Small Business Chapter 11 Plan of Reorganization and Disclosure Statement* [Docket No. 170] (the "First Immaterial Modification") (iv) *Second Corrected Immaterial Modification to its Combined Small Business Chapter 11 Plan of Reorganization and Disclosure Statement* [Docket No. 185] (the "Second Immaterial Modification") (together the First Immaterial Modification and the Second Immaterial Modification are referred to as the "Immaterial Modifications"), (v) all other evidence admitted and arguments of counsel made at the Confirmation Hearing, and (vi) the entire record of the Chapter 11 Case.  A copy of the Immaterial Modifications is attached hereto as Exhibit "B".

Several creditors objected to the Plan.  At the Confirmation Hearing, it was reported that all objections had been resolved (as reflected in the Immaterial Modifications) except the objections filed by (1) Ditech Financial LLC f/k/a Green Tree Servicing LLC  ("Ditech") [Docket No. 161] with respect to property located at 2101 East 430 South, Lafayette, Indiana and (2) Wells Fargo Bank ("Wells Fargo") [Docket No. 144] with respect to property located at 6818 North 75 East, West Lafayette, Indiana.

After due deliberation and finding good and sufficient cause, this Court makes the following findings of fact, conclusions of law, and enters this Confirmation Order confirming the Plan.

THIS COURT FINDS AND CONCLUDES:

A.     Filing of the Plan. On June 28, 2016, the Debtor filed the Plan [Docket No. 121].

B.     Combined Chapter 11 Plan and Disclosure Statement.  The Court entered its *Order Setting Plan Proponent Requirements and Notice of Confirmation Hearing and Filing Deadlines* [Docket No. 123] (the "Disclosure Statement Order").  The Disclosure Statement Order (i) fixed the date for a hearing to consider confirmation of the Plan, (ii) established voting and objection deadlines with respect to the Plan and the Confirmation Hearing, and (iii) established certain procedures for soliciting and tabulating votes with respect to the Plan.

C.     Classes of Claims under the Plan.  The Plan provides for four classes of Claims and Equity Interests**:** Class 1 are unsecured priority claims, Class 2 are all the similarly situated secured creditors having a specific interest in collateral of the Debtor further subdivided into those specific items of collateral, Class 3 are general unsecured claims and Class 4 are equity interests of the Debtor.  All classes were identified as impaired and were entitled to vote on the Plan.

D.     Transmittal of Solicitation Package.  Pursuant to the Disclosure Statement Order, a "solicitation" packet consisting of (1) the Combined Chapter 11 Plan and Disclosure Statement, (2) the Disclosure Statement Order, and (3) a ballot and return envelope for voting on the Plan ("Ballot") was transmitted to all creditors in accordance with Fed. R. Bank. P. 3017 (the "Solicitation Packet").  *See* Docket No. 123.

E.     Voting Reports.  On August 14, 2016, the Debtor filed the Ballot Report, and on August 26, 2016 the Debtor filed the Amended Ballot Report certifying the method and results of the Ballot tabulation.

3

F.      Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §
157(b)(2) and 1334(a)).  The Court has jurisdiction over the Chapter 11 Case pursuant
to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and
1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L),
and the Court has exclusive jurisdiction to determine whether the Plan complies with the
applicable provisions of the Bankruptcy Code and should be confirmed.

G.      Judicial Notice.  The Court takes judicial notice of the docket of the
Chapter 11 Case maintained by the Clerk of the Court and/or its duly-appointed agent,
including without limitation, all pleadings and other documents filed, all orders entered,
and all evidence and arguments made, proffered or admitted at the hearings held before
the Court during the pendency of the Chapter 11 Case.

H.      Transmittal and Mailing of Materials; Notice.  Due, adequate and
sufficient notice of the Disclosure Statement and Plan and of the Confirmation Hearing,
along with all deadlines for voting on and filing objections to the Plan, has been given to
all known holders of Claims in accordance with the procedures set forth in the
Disclosure Statement Order.  The Disclosure Statement, Plan, Ballots, Disclosure
Statement Order, and notice of the date of the Confirmation Hearing and the deadlines
for voting and objecting were transmitted and served in substantial compliance with the
Disclosure Statement Order, the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules") and the local rules applicable to the United States Bankruptcy
Court for the Southern District of Indiana ("Local Rules"), and such transmittal and
service were adequate and sufficient and no other or further notice is or shall be
required.

I.      Good Faith Solicitation (11 U.S.C. § 1125(e)).  The Debtor and its agents, representatives, attorneys, and advisors have solicited votes on the Plan in good faith and in compliance with Sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017.1 and 3018, the Disclosure Statement Order, and all other applicable rules, laws, and regulations.  The Debtor and its agents, representatives, attorneys, and advisors are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

J.      Ballots.  All procedures used to distribute solicitation materials to the applicable holders of Claims and to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

K.      Impaired Class Voted to Accept the Plan.  As evidenced by the Ballot Report and the Amended Ballot Report, which certified the results of the voting, pursuant to the requirements of Section 1124 and 1126, at least one impaired Class of Claims, determined without including any acceptance by an insider of the Debtor, has voted to accept the Plan.  Impaired Classes 2A, 2B and 2F accepted the Plan by more than half in number and two-thirds in amount of the valid Ballots returned.

L.      Classes Deemed to Have Rejected the Plan.  Holders of Equity Interests in Class 4 are not entitled to receive any distribution under the Plan on account of their Equity Interests.  Pursuant to Section 1126(g) of the Bankruptcy Code, Class 4 is conclusively presumed to have rejected the Plan, and the votes of Equity Interests therefore were not required to be solicited.

M.     <u>Presumed Acceptances by Unimpaired Classes</u>.  Pursuant to Section 1126(f) of the Bankruptcy Code, holders of Claims that are unimpaired are conclusively presumed to have accepted the Plan.  There are no classes of Claims unimpaired by the Plan.

N.     <u>Burden Of Proof</u>.  The Debtor introduced evidence by way of two sworn witnesses who testified at the Confirmation Hearing.  The Debtor has met its burden of proving the elements of Sections 1129(a) and (b) of the Bankruptcy Code.

O.     <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

a.     <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to Administrative Expense Claims and Priority Tax Claims (which are not required to be classified), Article IV of the Plan designates three (3) Classes of Claims and one (1) Class of Equity Interests.  The Claims and Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests in each such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Equity Interests.  Thus, the Plan satisfies Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b.     <u>Specification of Treatment of Impaired Class (11 U.S.C. 1123(a)(3))</u>.  The Plan specifies the Classes of Claims and Equity Interests that are impaired under the Plan and the treatment of impaired

Claims and Equity Interests in all such Classes.  Thus, the Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

c.      No Impermissible Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim has agreed to less favorable treatment with respect to such Claim or the law allows for a different treatment.  Thus, the Plan satisfies Section 1123(a)(4) of the Bankruptcy Code.

d.      Implementation of Plan (11 U.S.C. § 1123(a)(5)).  The Plan provides adequate and proper means for implementation of the Plan, including, without limitation, (a) the creditors' election to take cash or equity; (b) the existence of funding necessary to make cash distributions called for under the Plan; and (c) the operation of the Reorganized Debtor's business.  Thus, the Plan satisfies Section 1123(a)(5) of the Bankruptcy Code.

e.      Prohibition Against Issuance Of Non-Voting Equity Securities And Provisions For Voting Power Of Classes Of Securities (11 U.S.C. § 1123(a)(6)).  Section 1123(a)(6) does not apply to the Plan.

f.      Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)). Pursuant to the Plan, the current officers and directors of the Debtor are terminated under the Plan and the new officers and directors will replace them in exchange for the new value contribution to be made under the Plan.  Thus, before new officers receive any compensation from the

Debtor , creditors will have received their pro rata share of the new value contribution which represents full payment of what they are entitled to receive on their unsecured claims under the confirmed plan.  The employment of such individuals and the proposed compensation arrangements for such officers and directors is consistent with the interests of the holders of Claims and Equity Interests and with public policy.  Thus, Section 1123(a)(7) of the Bankruptcy Code is satisfied.

g.    Additional Plan Provisions (11 U.S.C. § 1123(b)).  The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including without limitation, provisions for (i) distributions to holders of Allowed Claims, (ii) the disposition of executory contracts and unexpired leases, (iii) the retention of, and right to enforce, sue on, settle or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived and released under the Plan, (iv) resolution of Disputed Claims, (v) allowance of certain Claims, (vi) injunction binding creditors to a treatment under the Plan, and (vii) exculpation and releases

h.    Fed. R. Bankr. P. 3016(a).  The Plan is dated June 28, 2016, and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a).

P.    The Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(2) of the Bankruptcy Code.  Specifically, The

8

Debtor is a proper party under Section 109 of the Bankruptcy Code, and The Debtor is a proper proponent of the Plan under Section 1121(a) of the Bankruptcy Code.  The Debtor has complied with the applicable provisions of the Bankruptcy Code, including as provided or permitted by orders of the Bankruptcy Court, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Ballots and in soliciting and tabulating votes on the Plan.

       Q.    <u>Plan Proposed In Good Faith (11 U.S.C. § 1129(a)(3))</u>.  Following good faith negotiations among The Debtor and other parties in interest, The Debtor proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the pleadings filed in the Chapter 11 Case and its related proceedings, statements and arguments made at hearings before this Court, and the formulation and provisions of the Plan.  The Court finds that the Plan was proposed with the legitimate and honest purpose of maximizing the value of the recovery to the holders of Allowed Claims under the circumstances of the Chapter 11 Case.

       R.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payment made or to be made by The Debtor for services or for costs and expenses in connection with the Chapter 11 Case, including all administrative expenses under Sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Case is subject to the approval of, the Court as reasonable, thereby satisfying Section 1129(a)(4) of the Bankruptcy Code.

S.    <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The

Debtor has complied with and met the requirements of Section 1129(a)(5) of the

Bankruptcy Code

T.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6) of

the Bankruptcy Code is not applicable because the Plan does not provide for any

change in rates over which a governmental regulatory commission has jurisdiction.

U.    <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies

Section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis in the Disclosure

Statement Order (1) is persuasive, credible and accurate as of the dates such evidence

was prepared, presented, or proffered, (2) has not been controverted, (3) is based upon

reasonable and sound assumptions of the effect on distributions from the Debtor upon

conversion to a case under chapter 7 of the Bankruptcy Code, and (4) reasonably

establishes that each holder of a Claim or Equity Interest in an impaired Class that has

not accepted the Plan will receive or retain under the Plan, on account of such Claim or

Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less

than the amount that it would receive if the Debtor was liquidated under Chapter 7 of the

Bankruptcy Code on such date.

V.    <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8))</u>.  Not all

impaired classes have accepted the Plan.  The Court finds that Classes 2A, 2B and 2F,

all impaired classes, voted to accept the Plan. Classes 1 and 4 did not cast a Ballot on

the Plan.

W.    <u>Treatment of Administrative Expense Claims and Priority Tax</u>
<u>Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of

administrative expense Claims and priority Claims under the Plan satisfies the requirements of Section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of priority tax Claims under the Plan satisfies the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code.

   X. <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Impaired Classes 2A, 2B and 2F accepted the Plan.  Thus, Section 1129(a)(10) of the Bankruptcy Code is satisfied.

   Y. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  Titan Management Group, LLC ("Titan") manages over 700 properties, of which at least 400 are apartment rentals. Titan has managed the Debtor's 17 rental properties since the inception of the case. Jonathan Jura, the owner of Titan, testified that the occupancy rate of the Debtor's rental properties was 30% when Titan first took over management duties and that it currently exceeds 90%.  Titan is paid a fee of 10% of gross rents received and segregates an additional 15% of gross revenues to use for property maintenance.  Titan has caught up most of the deferred maintenance that the properties needed when Titan first was appointed property manager.  Titan combined insurance coverage for all 17 properties, and all 17 properties are covered under the same policy, paid with one $1150 premium which saves The Debtor money.  The Debtor's projections included $860 in monthly rental income for the 2101 East 430 South ("2101") property, but 2101 was vacant as of the date of the Confirmation Hearing.  Jura testified that Titan was making repairs to 2101 and that they would be completed in the next couple of months at an estimated cost of $2000.  Based on this information, the Court finds that it is reasonable to assume that 2101 will rent out for at least $860 a month sometime within

the next three months.  The Debtor's projections also showed no monthly income for the 30 East Court property ("East Court'), but East Court was not vacant and was renting at $900 a month.  The Debtor projected monthly income of $13,585, and total operating monthly operating expenses (management fees, maintenance reserve, and property taxes) of $4801, leaving $8784 in net income.  After backing out an additional 10% vacancy reserve, the projected cash available for distribution each month was $7425. Projected monthly debt service is $7333.58, leaving the Debtor a projected thin cushion of little more than $91 a month, but that figure already takes into account a 10% vacancy reserve and a 15% maintenance reserve.  The projected monthly income failed to take into account the rent for East Court, the current vacancy at 2101, and the eventual rental of 2101 at the rate of at least $860 within the next few months. The Debtor was behind in filing its monthly operating reports as of the date of the Confirmation Hearing and was ordered to file, and has filed, all outstanding monthly operating reports through July, 2016.  According to those reports, the Debtor has exceeded its projected monthly income of $13,585 for each month since March 2016. On the Effective Date, the Debtor will have sufficient cash to satisfy its requirements under the Plan and continue in operation.  The feasibility test under §1129(a)(11) requires the court to determine whether the plan offers the debtor a reasonable probability or assurance of success, but does not require a guarantee or certainty of success.  *In re Cavu/Rock Properties Project I, LLC*, 530 B.R. 349, 356 (W.D. Tex. 2015); *In re Envirodyne Industries, Inc.*, 1993 WL 566565 at *35 (Bankr. N. D. Ill. December 20, 1993).  The Court concludes that, based on the projections and the more

recent operating reports, the plan offers the debtor a reasonable probability of success and therefore satisfies §1129(a)(11) of the Bankruptcy Code.

Z.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  The Debtor has paid or will pay by the Effective Date fees payable under 28 U.S.C. § 1930, thereby satisfying Section 1129(a)(12) of the Bankruptcy Code.

AA.    <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 1129(a)(13) of the Bankruptcy Code requires that, following the Effective Date of the Plan, the payment of all retiree benefits (as defined in Section 1114 of the Bankruptcy Code), <u>if</u> <u>any</u>, will continue at the levels established pursuant to subsections (e)(1)(B) or (g) of Section 1114 of the Bankruptcy Code, at any time prior to the entry of this Confirmation Order, for the duration of the period the debtor has obligated itself to provide such benefits. The Debtor has never funded nor maintained retiree benefits plans, funds, or programs as defined in Section 1114 of the Bankruptcy Code, and therefore, Section 1129(a)(13) is either not applicable or is satisfied.

BB.    <u>Section 1129(b) Confirmation of the Plan Over Nonacceptance Of Impaired Classes</u>.  All of the requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8) (all classes accept), have been met.  Brenda and Greg Hatfield currently own all the membership interests in the Debtor and are the holders of all Class 4 interests. The Class 4 Equity Interests are impaired, are being cancelled under the Plan, and thus, Class 4 is deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).  Notwithstanding the fact that not all impaired Classes have voted to accept the Plan, it nonetheless may be confirmed under the "cramdown" provisions of §1129(b) as long as the Plan does not discriminate unfairly and is fair and equitable with

respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.  Among the "fair and equitable" requirements is that a dissenting class of unsecured creditors must be paid in full before any junior class (here, Class 4, Equity Interests) can receive or retain any property on account of its Equity Interests. See §1129(b)(2)(B)(ii).  This requirement is commonly referred to as the "absolute priority rule".  The "new value" exception to the absolute priority rule allows equity to retain its interests if the equity interest holder contributes value that is on account of a new (post bankruptcy) cash infusion. The absolute priority rule can be circumvented altogether where someone other than current equity holders get the equity in the reorganized debtor by contributing value to the reorganized debtor.  However, the absolute priority rule cannot be avoided if the "someone" is an insider of the debtor.  *In re Castleton Plaza, LP,* 707 F.3d 821, 823 (7th Cir. 2013).  The Plan proposes to cancel the Hatfields' Class 4 equity interests and reissue the reorganized Debtor's equity interest in Jessica Ganser ("Jessica"), the Hatfields' daughter, who is an insider under §101(31)(B)(vi).  Thus, the absolute priority rule applies and the Debtor must show that the $2500 is sufficient "new value" in order to meet the requirements of §1129(b)(2)(B)(ii).  The best way to show whether the proposed new value is adequate is to subject it to the competitive bidding process where a creditor or an investor might pay more for the equity interest.  *Bank of America National Trust  & Savings Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999).  Here, Ditech argues that Jessica's $2500 new value contribution is inadequate. The Debtor's 17 properties have no equity.  Titan was given the opportunity to purchase the equity interest in the reorganized Debtor and declined.  Neither Ditech nor any other

14

party offered evidence that the equity interest in the reorganized Debtor is worth more than $2500 or that there was another party willing to pay more for it. The Debtor's exclusivity period expired in late February or early March, 2016, giving creditors the right to file competing plans. None did. The $2500 new value contribution is sufficient, and the Plan does not violate §1129(b)(2)(B)(ii). The interest rates proposed to be paid to the secured creditors of either 5.0% or 5.5% are fair and reasonable. The Court further finds that the Plan is fair and equitable and does not discriminate unfairly, all as required by Section 1129(b) of the Bankruptcy Code, and the Plan is confirmable under Section 1129(b).

CC.   Principal Purpose of Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), and no governmental unit that is a party in interest in the Chapter 11 Case has asserted any such claim.

DD.   Injunction.  The injunction provided for under Sections 524 and 1141 of the Bankruptcy Code constitutes a necessary means of implementing the Plan. The injunction (1) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), (b), and (d); (2) is an essential means of implementing the Plan pursuant to Section 1123(a)(5) of the Bankruptcy Code; (3) is an integral element of the transactions incorporated into the Plan; (4) confers material benefit on, and is in the best interest of, the Debtor's Estate and its creditors; (5) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Case with respect to the Debtor; and (6) is consistent with Sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

15

EE.    <u>Exculpation</u>.  The exculpation provision, to the extent provided for in the Bankruptcy Code, constitutes a necessary means of implementing the Plan.  The exculpation provision is reasonable and is within the jurisdiction of the Bankruptcy Court to grant and is in the best interests of the Debtor's Estate.

FF.    <u>Conditions to Consummation</u>.  Each of the conditions to the Effective Date, as set forth in the Plan, is reasonably likely to be satisfied.

GG.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court properly may retain jurisdiction over matters concerning claims, the Plan and those additional matters that are more fully set forth in Article X of the Plan.

HH.    <u>Preservation of Causes of Action</u>.  It is in the best interests of the holders of Claims and Equity Interests that all Causes of Action that are not expressly released under the Plan be retained by the Debtor pursuant to the Plan in order to maximize the value of the Debtor's Estate.

ACCORDINGLY, IT IS ORDERED:

1.    <u>Confirmation</u>.  The Plan is APPROVED and CONFIRMED under Section 1129 of the Bankruptcy Code.  The terms of the Plan and the Exhibits to the Plan are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

2.    <u>Provisions Of Plan And Order Nonseverable And Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

3.      Plan Classification Controlling.  The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the holders of Claims against, or Equity Interests in, the Debtor in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Equity Interests under the Plan for distribution purposes, (c) may not be relied upon by any holder of a Claim or Equity Interest as representing the actual classification of such Claims or Equity Interests under the Plan for distribution purposes, and (d) shall not be binding on the Debtor or its Estate.

4.      Treatment of Claims Classes.  The treatments of the classified Claims and Equity Interests (Classes 1 through 4) as set forth in Article V of the Plan, as modified by the Immaterial Modifications, is approved and distributions made in accordance with those treatments shall be in full and final satisfaction of any and all of the Allowed Claims and Allowed Equity Interests in Classes 1 through 4.

5.      Exculpation.  The exculpation provisions, to the extent provided for in the Bankruptcy Code, are deemed incorporated in this Confirmation Order as if set forth in full herein and are hereby approved in their entirety.

6.      Injunction.  The injunction provided for under Sections 524 and 1141 of the Bankruptcy Code is incorporated in this Confirmation Order in its entirety as if fully set forth herein, and except as otherwise specifically provided in the Plan or

ordered by this Court, from and after the Confirmation Date and subject to the Effective

Date, all Persons are bound by this injunction.

    7.  <u>Matters Relating to Implementation of the Plan: General</u>

<u>Authorizations</u>.  The approvals and authorizations specifically set forth in this

Confirmation Order are nonexclusive and are not intended to limit the authority of the

Debtor or any officer of the Debtor to take any and all actions necessary or appropriate

to implement, effectuate and consummate any and all documents or transactions

contemplated by the Plan or this Confirmation Order.  In addition to the authority to

execute and deliver, adopt, assign, or amend, as the case may be, the contracts,

leases, instruments, releases and other agreements specifically granted in this

Confirmation Order, the Debtor is authorized and empowered, to take any and all such

actions as it may determine are necessary or appropriate to implement, effectuate and

consummate any and all documents or transactions contemplated by the Plan or this

Confirmation Order, including: (a) enter into, execute and deliver, adopt or amend, as

the case may be, any of the contracts, leases, instruments, releases and other

agreements or documents and plans to be entered into, executed and delivered,

adopted or amended in connection with the Plan, and, following the Effective Date, each

of such contracts, leases, instruments, releases and other agreements shall be a legal,

valid and binding obligation of the Debtor and enforceable against the Debtor in

accordance with its terms; or (b) authorize the Debtor to engage in any of the activities

set forth in this paragraph or otherwise contemplated by the Plan.

    8.  <u>Officers</u>.  The existing officers of the Debtor are terminated as of

the date this order becomes a final order.

9.      <u>Preservation of Causes of Action</u>.  The Debtor shall retain and may (but is not required to) enforce all Causes of Action or claims arising under applicable state laws, if any, and including Causes of Action of a trustee or debtor-in-possession under the Bankruptcy Code except those expressly released under the Plan.  The Debtor will determine whether to bring, settle, release, compromise, or enforce any such rights (or decline to do any of the foregoing).  The failure of the Debtor to specifically list any Cause of Action, or otherwise, does not and will not be deemed to constitute a waiver or release by the Debtor of such Cause of Action, and the Debtor will retain the right to pursue such Causes of Action in its discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such Cause of Action upon or after the confirmation or consummation of the Plan; provided, however, that notwithstanding the payment on account of an Allowed Claim, the Debtor shall retain the right to assert and/or pursue any Causes of Action against the parties subject thereto any and all rights ancillary thereto, including the right to collect judgments thereon.

10.      <u>Exemption from Certain Taxes and Recording Fees</u>.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the making, delivery, filing or recording of any instrument of transfer under, or in connection with, the Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax.  Furthermore, and without limiting the foregoing, any transfers from the Debtor to any other Person pursuant to the Plan, as contemplated by the Plan, or pursuant to any agreement regarding the transfer of title to or ownership of the Debtor's property in the United States will not be subject to any

document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or

use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax,

Uniform Commercial Code filing or recording fee, or other similar tax or governmental

assessment.  All filing or recording officers (or any other Person with authority over any

of the foregoing), wherever located and by whomever appointed, shall comply with the

requirements of Section 1146(a) of the Bankruptcy Code, shall forgo the collection of

any such tax or governmental assessment, and shall accept for filing and recordation

any of the foregoing instruments or other documents without the payment of any such

tax or governmental assessment.  The Bankruptcy Court shall retain specific jurisdiction

with respect to these matters.

   11. <u>Professional Claims and Final Fee Applications</u>.  The provisions of

the Plan shall govern fee claims of professionals, including final fee applications,

payment of interim amounts, and deadlines and procedures relating thereto, as well as

post-Effective Date compensation and retention.

   12. <u>Resolution of Claims and Equity Interests</u>.  Except as otherwise

ordered by the Bankruptcy Court, any Claim or Equity Interest that is not an Allowed

Claim or Allowed Equity Interest shall be determined, resolved, or adjudicated in

accordance with the terms of the Plan.  The Debtor may until thirty (30) days after the

entry of this Order (unless extended pursuant to the Plan or by order of the Bankruptcy

Court) file objections in the Bankruptcy Court to the allowance of any Claim or Equity

Interest (whether or not a proof of Claim or Equity Interest has been filed).

   13. <u>Payment of Fees</u>.  All fees payable by the Debtor under 28 U.S.C.

§ 1930 shall be paid on or before the Effective Date, and The Debtor shall thereafter

pay any statutory fees that come due until the Chapter 11 Case is closed, converted or dismissed.

14. <u>Authorization to Consummate Plan</u>.  The Bankruptcy Court authorizes the Debtor to consummate the Plan after entry of this Confirmation Order. The Debtor is authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, uniform commercial code financing statements, trust agreements, mortgages, indentures, security agreements, and bills of sale and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Plan, all transactions contemplated by the Plan, and all other agreements related thereto.

15. <u>Failure to Consummate Plan and Substantial Consummation</u>.  If consummation of the Plan does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), the rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void.  In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall (a) constitute a waiver or release of any claims by or against (including any Claims) or Equity Interests in the Debtor or any other Person, (b) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, (c) constitute an admission of any sort by the Debtor or any other Person, or (d) be construed as a finding of fact or conclusion of law with respect thereto.

16.     <u>Retention of Jurisdiction</u>.  Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction as provided in Article X the Plan over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in the Plan.

17.     <u>References to Plan Provisions</u>.  The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

18.     <u>Filing and Recording</u>.  This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Equity Interests existing prior to such date shall be limited to the treatments set forth in the Plan, whether or not the holders of such Claims and Equity Interests has accepted the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders

22

of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state and local officials, and all

other persons and entities who may be required, by operation of law, the duties of their

office, or contract, to accept, file, register or otherwise record or release any document

or instruments.  Each and every federal, state and local government agency is hereby

directed to accept any and all documents and instruments necessary, useful or

appropriate (including Uniform Commercial Code financing statements) to effectuate,

implement and consummate the transactions contemplated by the Plan and this

Confirmation Order without payment of any recording tax, stamp tax, transfer tax or

similar tax imposed by state or local law.

   19. Notice of Confirmation Order and Occurrence of Effective Date.  On

or before the fifth (5th) Business Day following the occurrence of the Effective Date, The

Debtor shall serve notice of this Confirmation Order and of the Effective Date pursuant

to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on all creditors and equity

security holders, the United States Trustee, and other parties-in interest, by causing a

notice of this Confirmation Order and of the Effective Date (the "Notice of Effective

Date"), to be delivered to such parties by electronic mail or first class mail, postage

prepaid, provided, however, that notice need not be given or served under the

Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to

whom the Debtor mailed the Solicitation Packet, but received such notice returned

marked "undeliverable as addressed," "moved-left no forwarding address," "forwarding

order expired," or similar reason, unless the Debtor has been informed in writing by

such Person of that Person's new address.  The notice described herein is adequate

under the particular circumstances of the Chapter 11 Case, and no other or further notice is necessary.

20.     If in this Order, any finding of fact is more properly a conclusion of law or if any conclusion of law is more properly a finding of fact, the Bankruptcy Court so finds and concludes.

###

Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:

PRIME RENTALS, LLC,

Debtor.

Case No. 15-7473-RLM-11

## COMBINED SMALL BUSINESS CHAPTER 11 PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT

Prime Rentals, LLC, Debtor and Debtor in Possession, ("Debtor"), hereby submits this Combined Small Business Chapter 11 Plan of Reorganization and Disclosure Statement, ("Plan"), pursuant to Chapter 11 of the United States Bankruptcy Code.

### I.        Relevant Code Provisions

**Small Business Matters**

Debtor is a small business Debtor as that term is defined under 11 USC § 101 (51D) because the aggregate of its debts is less than $2.5m, making this case is a small business case under 11 USC § 101 (51C). As such, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, ("BAPCPA"), this Plan may combine the information of a separate Disclosure Statement, ("Disclosure Statement"). By separate Notice filed with the Court at the same time as this Plan, the Debtor invoked Local Rule B-3017-2 (a)(3), by giving notice that it seeks the Court's approval of the Disclosure Statement information contained in the Plan. Under such rule, this Plan may be disseminated to creditors for voting without separate approval of the Disclosure Statement information, although creditors may still object to the adequacy of such information at any hearing held on confirmation of the Plan.

**Creditor Voting on the Plan**

Creditors may vote on the Plan by filling out and mailing the accompanying ballot to debtor's counsel as indicated therein. As a creditor, acceptance is important. In order for the Plan to be deemed accepted, of the ballots cast, creditors that hold at least two-thirds in dollar amount and more than one-half in number of the allowed claims of all impaired classes must vote for the Plan. No representations

concerning the Debtor (particularly as to its future income, value of property, or the value of any promissory notes to be issued under the Plan) are authorized by the proponent of the Plan, or the Debtor other than as set forth in this statement.  Any representations or inducements made to secure creditor acceptance which are other than as contained in this statement should not be relied upon by creditors in arriving at a decision on acceptance of the Plan, and such additional representations and inducements should be reported to counsel for the debtors who in turn shall deliver such information to the Bankruptcy Court for such action as may be deemed appropriate.  The information contained herein has not been subject to a certified audit.  For this reason, the proponent is unable to warrant or represent the information contained herein is without any inaccuracy, although great effort has been made to be accurate.

**Tax Ramifications**

BAPCPA requires a "discussion of the potential material Federal tax consequences of the Plan to the Debtors, any successor the Debtors, and a hypothetical investor typical of the holders of claims or interests in the case." 11 USC § 1125 (a)(1).  Under IRS Circular 230, to the extent this Plan is deemed a communication from counsel to the Debtors, and to ensure compliance with requirements imposed by the IRS, you are informed that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code, or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.  Among the many uncertainties of BAPCPA, this requirement is perhaps most difficult for the Debtors to address but, to the best of its ability to do so, the primary tax ramification to the Debtors is the reduction of tax attributes for debt forgiven as a result of the treatment of creditor claims under the Plan.  To the extent debt levels are reduced sufficiently to render the Debtors solvent, it is possible that taxable income may be recognized by the Debtors.

## II.    Definitions

The following terms when used in the Plan shall, unless the context otherwise requires, have the following meanings:

**Administrative Expense Claim:**

Any claim for expenses of this Chapter 11 case, pursuant to 28 U.S.C. Section 1930, and Section 503 (b) of the Code and entitled to priority under Section 507 (a)(1) of the Code, including, without limitation, (i) the actual and necessary costs and expenses of preserving the estate of the Debtor and of operating its business and (ii) the full amount of all claims for compensation for legal or other professional services or reimbursement of costs and expenses under Section 330 and Section 503(b) of the Code, to the extent each such claim is an allowed claim.

**Allowed Claim or Allowed Interest:**

Any claim against or interest in the Debtor, (i) the proof of which was filed on or before the date designated by the Court as the last day for filing proof of claims or interest, or (ii) which has been or hereafter is scheduled by the Debtor as liquidated in the amount and not disputed or contingent, and in either case, a claim or interest to which the Debtor has not objected or that has not been allowed by the Court.

**Bankruptcy Rules:**

The Bankruptcy Rules promulgated by the Supreme Court of the United States, which became effective on August 1, 1983 as amended.

**Bar Date:**

The last day for filing claims in this proceeding as fixed by the Court.

**Chapter 11 Petition:**

The Voluntary Petition filed by Debtor on September 2, 2015 to commence this chapter 11 case.

**Claim:**

Claim, as defined in Section 101(5) of the Code against the Debtors.

**Code:**

Title 11 of the United States Code as amended.

**Confirmation Date:**

Date on which the clerk of the Court shall have entered the Confirmation Order on the docket.

**Confirmation Order:**

Order entered by the Court confirming the Plan pursuant to the Code.

**Court:**

The United States Bankruptcy Court for the Southern District of Indiana, Indianapolis

3

Division.

**Costs**

    Costs and out of pocket expenses properly charged under any applicable loan agreement between the Debtor and a Secured Creditor having accrued prior to the Petition Date.

**Debtor:**

    Prime Rentals, LLC, an Indiana limited liability company, Debtor and Debtor in Possession, ("Debtor").

**Disclosure Statement**

    The Disclosure Statement information contained in this Plan, including any modifications, amendments, corrections or supplements.

**Effective Date:**

    Date on which the Confirmation Order becomes a Final Order.

**Final Order:**

    Order, judgment or decree of the Court as to which (a) any appeal that has been timely taken has been finally determined or dismissed; (b) the time or appeal has expired and no appeal has been timely taken in accordance with Rule 8002 of the Bankruptcy Rules and any applicable local procedural rule; or (c) an appeal has been timely taken, but such order has not been stayed within 10 days after the filing of such appeal.

**Interests:**

    The legal, equitable and contractual rights of Debtor.

**Persons:**

    Has the meaning set forth in § 101(41) of the Code.

**Plan:**

    This Plan of Reorganization, including any modifications, amendments, corrections or supplements.

**Priority Tax Claim:**

    Any claim entitled to priority pursuant to Section 507(a) (7) of the Code, to the extent such claim is an allowed claim.

**Professionals:**

    The Professional people and firms hired by the estate to represent the Debtor, including its counsel, management consultants and accountants.

4

### III.    Disclosure Statement Information

**Historical Perspective**

Debtor is engaged in the business of owning and operating 17 residential rental homes, located in and around West Lafayette, Indiana. Each of the houses are financed separately using traditional secondary market non owner occupied 30 year amortized market rate loans. There are six different lenders but each is a mortgage servicing company or a division of a bank dedicated to such services.

Debtor is owned by Brenda and Greg Hatfield, who are the original makers of the debt in this case. Immediately prior to and in anticipation of the filing, the Hatfields transferred title to the houses to the Debtor, subject to the existing mortgage debt. The Hatfields not filed a personal bankruptcy case, Because the Debtor has legal title to each of the houses it has the ability to file this Plan and treat creditor claims, despite the fact that it is not in privity with the affected lenders.

This case presents the familiar tale of a real estate business that was dealt the triple death knells of evaporating values, rising real estate taxes and diminishing rental income from a tenant base dealing with the Great Recession, even though that ended many years ago. Many of the properties owned by the Debtor are impaired in some functional way, although the Debtor has devoted substantial resources to improving the properties as cash flow has permitted. The Debtor has obtained the valuation opinion of a real estate professional with particular expertise in houses of this nature and has used that information both to prepare the schedules herein, and to negotiate with proactive creditors. The values listed by the Debtor reflect factors that are typically not used in formal appraisers such as structural and mechanical defects, neighborhood attributes and crime statistics, and city planning that affect value. In many cases the Debtor's continuing operation and maintenance of the properties is a benefit to the community and the lender, despite the limited financial benefit to the Debtor.

**Developments During the Case**

Debtor has sought and obtained the Court's authority to use cash collateral and has maintained the houses in the ordinary course. The Debtor was able to agree to terms with lenders seeking relief from the stay on six of its houses, is in active negotiation on six other properties, and otherwise believes the Plan represents a workable treatment of claims for the balance of lenders. The Debtor continues to devote its net available cash to improving properties where possible and the capital expense amount

projected in the budget attached hereto reflects the need for and obligation to devote cash to improving properties.

**Management Team**

The properties have been managed by Titan Management Group, LLC, a professional manager from the inception of the case, and will continue to be so operated post confirmation. The manager is paid a fee of ten (10%) of gross rents received for each property. Brenda Hatfield has been the principal officer of the Debtor for its entire existence, and is also the borrower on all of the debt in this case, and may be called upon from time to time to fund its operating shortfalls, which she and her husband have done since the inception of the Debtor. The Hatfields do not receive compensation from the Debtor and will not post-confirmation.

**Management's Retention of Ownership Interests**

The Hatfields are the sole interest holders, owning 100% of the membership interests of the Debtor. In order to address the absolute priority rule concerns of creditors, the equity interests of the Hatfields are cancelled under the Plan.

**Financial Information**

The assumptions and financial projections forming the basis of the Plan are attached hereto as follows:

Exhibit "A" is a summary of the values and related debt for each property owned by the Debtor, which is intended to be used as a liquidation analysis of the Debtors' assets;

Exhibit "B" is the Debtors' budget, which is based on the expected future earnings of the Debtor and the changes made to its financial transactions with creditors as provided in the Plan and operating metrics of each property owned by the Debtor; and

Exhibit "C" is a summary of the operating report information filed by the Debtor for the period from the filing of this case to present.

**What the Plan Does**

The Plan generally establishes a value for the assets used by the Debtor in the operation of its business, and proposes to pay each secured creditor having an interest in specific collateral that value all with commercially reasonable terms. The Plan also pays priority claims in accordance with the

6

treatment allowed under the Code, but the Debtor is not aware of any such claims at this time. The Plan further extinguishes the equity interests of the Hatfields and replaces them with new interests issued in favor of Jessica Ganser, the daughter of the Hatfields, in exchange for a cash contribution of $2,500, (the "New Value Contribution"). Upon receipt of this amount the Debtor shall make a one-time pro rata distribution to unsecured creditors. The Debtor is not aware of any other offers for the equity interests and believes that the contribution represents more than the value of the interests, but, in the event a creditor objects to this provision of the Plan, the Debtor shall conduct an equity auction immediately after confirmation of the Plan in which it shall offer the interests to the highest bidder, using the offer of Jessica Ganser as the opening bid for the interests.

## IV.  Classes of Claims

Claims are classified in the Plan based on the distinct legal rights attributable to each class, and the distinct business interests of the members of each class. The classes of claims treated under the Plan are as follows:

Unclassified Claims

Under 11 USC § 1123(a)(1), administrative expense claims, "gap" period claims in an involuntary case allowed under § 502(f) of the Code, and priority tax claims are not in classes in a Plan. They are, however, treated in the following manner:

Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code, and a "gap" claim in an involuntary case allowed under § 502(f) of the Code, will be paid in full on the effective date of this Plan in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Priority Tax Claims. Each holder of a priority tax claim will be paid consistent with 11 USC § 1129(a)(9)(C).

United States Trustee Fees. All fees required to be paid by 28 USC. §1930(a)(6) ("US Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any US Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

Class 1. Non Tax Priority Claims

All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under 11 USC § 507(a)(2), "gap" period claims in an involuntary case under § 507(a)(3), and priority tax claims under 11 USC § 507(a)(8)) will be paid as described below and in the exhibits attached to the Plan.

Class 2.  Secured Claims

All allowed secured claims under 11 USC § 506 will be paid as described below and in the attached exhibits attached to the Plan.  (Note: 11 USC § 1129(a)(9)(D) provides that a secured tax claim which would otherwise meet the description of a priority tax claim under 11 USC § 507(a)(8) is to be paid in the same manner and over the same period as prescribed in 11 USC § 507(a)(8)).

Class 3  General Unsecured Non Priority Claims Including Secured Creditor Deficiency Claims

All unsecured claims allowed under 11 USC § 502 will be paid as described below and in the exhibits attached to the Plan.

Class 4.  Equity

Equity interests of the Debtor as described below.

## V.    Treatment of Claims Under the Plan

**Unclassified Claims          Administrative Claims**

Normal budgeted expenses of the Debtor will be paid in the ordinary course of business.  Other administrative expense claims shall be paid in full.  Administrative expense claims include, but are not limited to, the compensation for services rendered and disbursements incurred by professionals whose retention has been approved by the Court, in connection with services performed in this Chapter 11 case.

Payments to professionals for compensation and reimbursement of expenses will be made in accordance with the procedures provided for in the Code and in any Order of the Court relating to the payment of interim and final compensation and expenses.  The Court will review and determine all requests for compensation and reimbursement of expenses.  At this time such fees are estimated at approximately $10k for Debtor's counsel.  Debtor has cash on hand sufficient to pay that amount.  It is not anticipated that professionals will object to confirmation of the Plan based on nonpayment of administrative fees.

**Class 1          Priority Tax Claims**

Priority tax claims will be paid in accordance with the priority set forth in the Code.  Such claims

8

are deemed to be impaired under the Plan.  At this time there are no known such claims.

<u>**Class 1**</u>          <u>**Non Tax Priority Claims**</u>

Priority tax claims will be paid in accordance with the priority set forth in the Code.  Such claims

are deemed to be impaired under the Plan.  At this time there are no known such claims.

<u>**Class 2**</u>          <u>**Secured Claims**</u>

<u>**2A**</u>          <u>**Secured Claim of PHH Mortgage Corporation ("PHH")**</u>

PHH has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 4509 Wagon Wheel Tr., Lafayette, IN | $70,000 | Xxxxxx 4509 | Lot Number One Hundred (100) in Rolling Hills Subdivision, Part Two (2), Section One (1), located in Wea Township, Tippecanoe County, Indiana |
| 30 E Court, Lafayette, In | $77,000 | xxxxxx  2057 | Lot Numbered Three Hundred Ninety Six (396) in the Revised Plat of Southlea Addition Part Two (2) to the City of Lafayette, Indiana, as recorded in Plat Book 7, Page 22, in the Office of the Recorder of Tippecanoe County, Indiana. Located in Fairfield Township, Tippecanoe County, Indiana. |
| 2100 Hiawatha Drive, Lafayette, IN | $50,000 | xxxxxx  0052 | Legal: Lot Number Forty-One (41) in Tecumseh Second Addition to the City of Lafayette, Indiana, as recorded in Plat Record Book 8, Page 34, in the Office of the Recorder of Tippecanoe County, Indiana. |
| 3000 Mojave Drive, Lafayette, IN | $50,000 | xxxxx  0086 | Legal: Lot Number Five Hundred Eight (508) in Tecumseh Third Addition Part I to the City of Lafayette, Indiana, as recorded in Plat Record Book 8, page 42, in the Office of the Recorder of Tippecanoe County, Indiana. |
| 4405 West Wagon Wheel Tr., Lafayette, IN | $67,000 | Xxxxxxx 8073 | LOT NUMBER ONE HUNDRED SEVEN (107) IN ROLLING HILLS SUBDIVISION, PART TWO (2), SECTION ONE (1), LOCATED IN WEA TOWNSHIP, TIPPECANOE COUNTY, INDIANA. |
| 11600 US 231 South (Romney IN) | $75,000 | Xxxxxxx 9398 | Part of the East Half of the Southeast Quarter of Section Nineteen (19), in Township Twenty-one (21) North, Range Four (4) |

PHH shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of

PHH") equal to the value of each such property constituting collateral for such claim as shown above,

limited to the amount of such creditor's claim.  The Debtor shall pay the Allowed Secured Claim of PHH

by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100%

of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and

twelve monthly payments per year.   Payments shall commence thirty days after the Effective Date and

continue until the Allowed Secured Claim is paid in full.  The terms and conditions of the note are

hereby incorporated in their entirety. If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein. Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

> PHH Mortgage Corporation
> Attn.: BK Payment Processing
> Mail Stop SBRP, One Mortgage Way
> Mt. Laurel, NJ 08054

PHH shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of ASC. The ASC claim is deemed to be impaired by the Plan.

### 2B    Secured Claim of Chase Bank ("CHASE")

CHASE has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 1232 Archway Drive, Lafayette, IN | $50,000 | xxxxxx 3020 | Lot Number Four Hundred Twenty-Two (422) in the Revised Plat of Southlea Addition, Part Two (2), to the City of Lafayette, Indiana, as recorded in Plat Record Book 7, Page 22, in the Office of the Recorder of Tippecanoe County, Indiana. |
| 1528 Fairfax Drive, Lafayette, IN | $58,000 | Xxxxxxx 1943 | LOT NUMBERED 18 IN LINDALE ADDITION, PART ONE, LOCATED IN WEA TWONSHIP, TIPPECANOE COUNTY, INDIANA. |
| 4518 Chisholm Drive, Lafayette, IN | $51,000 | Xxxxxxx 0320 | Lot number Fifty-four (54) in Rolling Hills Subdivision Part Two, Section Two, as platted upon part of the Northeast Quarter of Section Seventeen (17), Township Twenty-two (22) North, Range Four (4) West, which plat is recorded in Plat Book 13, Page 45 A, in the records of the Recorder of Tippecanoe County, Indiana. Located in Wea Township, Tippecanoe County, Indiana. |
| 3049 Commanche Tr., Lafayette, IN | $50,000 | Xxxxx 9180 | Lot Number Two Hundred Forty-eight (248) in Tecumseh Third Addition, Part One (1) to the City of Lafayette, Indiana. |

CHASE shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of CHASE") equal to the value of each such property constituting collateral for such claim as shown above, limited to the amount of such creditor's claim. The Debtor shall pay the Allowed Secured Claim of CHASE by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year. Payments shall commence thirty days after the

Effective Date and continue until the Allowed Secured Claim is paid in full.  The terms and conditions of the note are hereby incorporated in their entirety.  If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein.  Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

> JP Morgan Chase Bank
> OH4-7142
> 3415 Vision Dr.
> Columbus, OH 43219

CHASE shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of CHASE.  The CHASE claim is deemed to be impaired by the Plan.

### **2C      Secured Claim of Ditech Financail, f/k/a Green Tree ("Green Tree")**

Green Tree has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 2101 East 430 South, Lafayette, IN | $80,000 | xxxxxx  0349 | LOT NUMBER THIRTY-EIGHT (38) IN HIGH RIDGE SUBDIVISION, PART ONE (1), SECTION "F", ALSO, A PART OF THE NORTHWEST QUARTER OF SECTION 15, TOWNSHIP 22 NORTH, RANGE 4 WEST, WEA TOWNSHIP, TIPPECANOE COUNTY, INDIANA DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWESTERN CORNER OF LOT # 38 IN HIGH RIDGE SUBDIVISION, PART I, SECTION "F", AS RECORDED IN PLAT BOOK 13, PAGE 13, OFFICE OF THE RECORDER, TIPPECANOE COUNTY, INDIANA, THENCE SOUTH 87 DEGREES 40 MINUTES 00 SECONDS EAST, ALONG THE SOUTHERN LINE OF LOT NUMBER THIRTY-EIGHT (38), 120.21 FEET TO THE SOUTHEASTERN CORNER OF SAID LOT 38, THENCE 2 DEGREES 20 MINUTES 00 SECONDS WEST 217.80 FEET, THENCE NORTH 87 DEGREES 40 MINUTES 00 SECONDS WEST, 110.03 FEET, THENCE NORTH 00 DEGREES 20 MINUTES 30 SECONDS WEST, 218.04 FEET TO THE POINT OF BEGINNING, CONTAINING 0.58 OF AN ACRE, MORE OR LESS. |
| 50 Karin Court, Lafayette, IN | $70,000 | Xxxxxxx 2235 | LOT NUMBER THREE HUNDRED EIGHT (308) IN THE LINDALE ADDITION PART I, AS PER PLAT THEREOF RECORDED IN THE OFFICE OF THE RECORDER OF TIPPECANOE COUNTY, INDIANA |

Green Tree shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of Green Tree") equal to the value of each such property constituting collateral for such claim as shown above, limited to the amount of such creditor's claim.  The Debtor shall pay the Allowed Secured Claim of Green Tree by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year.    Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full.    The terms and conditions of the note are hereby incorporated in their entirety.  If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties" pre-petition shall control, except as modified herein.  Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

> Ditech Financial LLC, f/k/a Green Tree Servicing, LLC
> POB 0049
> Palatine, IL 60055-0049

Green Tree shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of Green Tree.  The Green Tree claim is deemed to be impaired by the Plan.

### 2D    Secured Claim of Nationstar ("NATIONSTAR")

NATIONSTAR has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---------|-------|----------------|-------------------|
| 3322 Commanche Tr., Lafayette, IN | $50,000 | xxxxxx 2312 | Lot numbered One Hundred Fifty-Six (156) in Pipers Glen Addition, Fourth Section, Revised, to the City of Lafayette, Indiana, as recorded plat record book 13, page 33, in the Office of the recorder of Tippecanoe County, Indiana. |

NATIONSTAR shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of NATIONSTAR") equal to the value of each such property constituting collateral for such claim as shown above, limited to the amount of such creditor's claim.  The Debtor shall pay the Allowed Secured Claim of NATIONSTAR by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years

with interest at 5% per annum and twelve monthly payments per year.    Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full.  The terms and conditions of the note are hereby incorporated in their entirety.  If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein.  Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

Nationstar
PO Box 650783
Dallas TX 75265

NATIONSTAR shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of NATIONSTAR.  The NATIONSTAR claim is deemed to be impaired by the Plan.

### 2E    Secured Claim of Ocwen ("OCWEN")

OCWEN has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 27 Goldenrod Court, Lafayette, IN | $68,000 | xxxxxx 5970 | Lot numbered One Hundred Twenty- four (124) in Prairie Oaks Subdivison, phase III, per the plat thereof dated December 8, 1992, recorded December 17, 1992 in Plat cabinet D, Slide 158, as Tippecanoe County, Indiana. Located in Wea Township, Tippecanoe County, Indiana. |

OCWEN shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of OCWEN") equal to the value of each such property constituting collateral for such claim as shown above, limited to the amount of such creditor's claim.  The Debtor shall pay the Allowed Secured Claim of OCWEN by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year.  Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full.  The terms and conditions of the note are hereby incorporated in their entirety.  If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein.  Payments to this creditor shall be made to the following address, and if mailed by the

Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

> Ocwen Loan Servicing
> PO Box 9001719
> Louisville KY 40290

OCWEN shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of OCWEN. The OCWEN claim is deemed to be impaired by the Plan.

## 2F    Secured Claim of Seterus ("SETERUS")

SETERUS has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 3360 Chaucer Drive, Lafayette, IN | $60,000 | xxxxxx 8253 | Lot numbered Thirty-nine (39) in Pipers Glen Addition, Third Section to the City of Lafayette, Indiana, as recorded in Plat Record Book 13, Page 17, in the Office of the Recorder of Tippecanoe County, Indiana. |
| 1505 Fairfax Drive, Lafayette, IN | $50,000 | Xxxxxxx 9332 | Lot numbered three hundred thirty-three (333) in Lindale Addition, Part 1 to the City of Lafayette, Indiana, Located in Wea Township, Tippecanoe County, Indiana. |

SETERUS shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of SETERUS") equal to the amount of its claim. The Debtor shall pay the Allowed Secured Claim of SETERUS by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year. Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full. The terms and conditions of the note are hereby incorporated in their entirety. If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein. Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

> FNMA
> c/o Seterus, Inc., BK Dept.

14

POB 1047
Hartford, CT 06143

SETERUS shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of SETERUS. The SETERUS claim is deemed to be impaired by the Plan.

### 2G    Secured Claim of America Service Company ("ASC")

ASC has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 6818 North 75 East West Lafayette, IN | $70,000 | xxxxxx 2506 | Parcel No.: 160-13500-0564 |

ASC shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of ASC") equal to the amount of its claim. The Debtor shall pay the Allowed Secured Claim of ASC by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year. Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full. The terms and conditions of the note are hereby incorporated in their entirety. If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein. Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

American Servicing Co. (ASC)
11503 Springfield Pike
Cincinnati oh 45246

ASC shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of ASC. The ASC claim is deemed to be impaired by the Plan.

### 2G    Secured Claim of Tippecanoe County Treasurer ("TCT")

TCT has a claim secured by a statutory lien on each individual property owned by the Debtor. Such claim shall be paid by equal monthly installment commencing on the Effective Date sufficient to fully amortize the TCT claim over five years with interest at 5%. Such claim shall include any amount advanced by any other secured creditor treated by this Plan for real estate taxes.

**3        Allowed Unsecured Claims**

Class 3 consists of Allowed Unsecured Claims which is comprised entirely of the deficiency claims of secured creditors. Such claims shall be allowed, settled, compromised, satisfied and paid in full thirty days after the Effective Date from the New Value Contribution. Class 3 is impaired and is entitled to vote on the Plan.

**4        Equity Interests of the Hatfields**

Class 4 consists of the Equity Interests of the Hatfields, which interests are extinguished under the Plan in exchange for the New Value Contribution. In the event a creditor objects to the New Value Contribution and an equity auction is held as described above, there shall be no New Value Contribution unless Jessica Ganser is the successful bidder in the auction, in which case the amount of such bid shall become the New Value Contribution.

## VI.    Means for Execution of Plan

Debtor shall continue to operate its business in accordance with the budget and related projection of income, expense and cash flow attached to its Disclosure Statement, and shall pay from the income derived therefrom, the amounts required to satisfy creditor claims herein.

## VII.    Executory Contracts and Unexpired Leases

All executory contracts and unexpired leases of Debtor, which have not heretofore been specifically rejected pursuant to an Order of the Court, are hereby specifically rejected, with the express exception of all existing tenant leases, which leases shall be assumed. Nothing contained in this Plan or any Order approving it shall impair any tenants' right to receive a refund of its security deposit, to the extent such refund is available under the terms of the applicable lease with such tenant. Any individual

or entity asserting a Rejection Claim in connection with such rejection shall file a proof of claim with the Clerk of the Court within 10 days after the entry of an Order approving such rejection or the Bar Date whichever is later. Any Rejection Claim, to the extent it is an Allowed Claim, shall be treated as an Unsecured Claim of Class 3, as appropriate.

VIII.    <u>Request for Confirmation Under Section 1129 (b)</u>

If all of the applicable requirements of Section 1129(a), other than Section 1129(a)(8) relating to an impaired class, are met with respect to the Plan, the Debtor requests that the Court find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under and has not accepted the Plan. Upon such finding, the Court is requested to confirm the Plan pursuant to Section 1129(b) notwithstanding the failure of such impaired class to accept the Plan.

IX.    <u>Modification of the Plan</u>

The Debtor may propose amendments or modifications of this Plan at any time prior to confirmation by notice to the creditors. After confirmation, the Proponent may, with the approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omissions, or reconcile any inconsistency in the Plan, or any order of confirmation, in such manner as may be necessary to carry out the purposes and effect of this Plan.

X.    <u>Retention of Jurisdiction of the Court</u>

The Court will retain jurisdiction following confirmation of the Plan only for the following purposes:

1.  Classification of any claims, the re-examination of claims which have been allowed for purposes of voting, and any necessary valuation of security pursuant to 11 U.S.C. Section 506. The failure of the Debtor to object to or to examine any claim for the purposes of voting shall not be deemed to be a waiver of the right to object to or re-examine the claim in whole or in part.

2. Fixing of allowances of compensation and other administration expenses.

3. Determination of the allowance or disallowance of claims and interests.

4. Determination of all questions and disputes regarding title to the assets of the estate and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to any right of the Debtor to recover assets pursuant to the provisions of the Code. In addition, the Court's power shall include, but not be limited to, the power to hear, determine and approve settlements of such litigation; appoint or approve a disbursing agent or agents to receive the proceeds of such claim subject to further order of the Court; hear, determine and allow the payment of expenses incidental to such claims, and to make such other orders and determinations as may be reasonable and proper.

5. The administration or modification of the Plan after confirmation, the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan and entry of any order reasonably necessary in order to enforce and interpret the terms and conditions of this Plan.

6. Entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

7. Upon application of the Debtor, the Court may enter an order of consummation finally dismissing the case and ordering the payment of such additional administrative expenses as may have been accumulated during the consummation of this Plan.

8. Hearing and determination of any and all motions, adversary proceedings, applications and contested matters arising under or related to this Chapter 11 case or the Plan.

9. Rejection of any executory contracts that are not discovered prior to confirmation and allowance of claims for damages as to the rejection of such contracts within such further time as the Court may direct.

10. Hearing and determination of any other matters not inconsistent with the Code.

## XI.   Miscellaneous Provisions

1.   <u>Headings.</u>  The headings in the Plan have been used for convenience and reference only, and do not constitute a part of the Plan or affect any of its provisions.

2.   <u>Severability.</u>  Should any provision of the Plan be determined to be unenforceable, such determination shall in no way affect the enforceability of any other provision of the Plan.

3.   <u>Governing Law.</u>  Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Indiana.

4.   <u>Successors and Assign.</u>  The rights and obligations of any individual or entity named in the Plan shall be binding upon and shall inure to the benefit of the successor and assigns of such individual or entity.

5.   <u>Effect of Confirmation.</u>  Upon confirmation of this Plan, or any amendment hereto or modification hereof, creditors whose claims have received treatment hereunder shall be barred from pursuing collection, taking action or otherwise attempting to enforce any rights against the Debtors except as specifically provided for herein.

6.   <u>Payment of Quarterly Fees pursuant to 28 U.S.C. §1930(a)(6).</u>  All quarterly fees owing to the United States Trustee shall be paid by the Debtor within 10 days of the entry of the order of confirmation or on the effective date of the plan, as required by § 1129(a)(12) of the Bankruptcy Code, and the payment of quarterly fees shall be made until the case is closed by order of the Court.  The Debtor, or the reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, Debtor shall submit to the United States Trustee a statement of all disbursements made during the course of each calendar quarter, whether or not pursuant to the Plan.

Dated:  June 28, 2016,

Prime Rentals, LLC

_____/s/ Brenda Hatfield _____
By: Brenda Hatfield, its Managing Member

19

Attorney for the Debtor:
KC Cohen 04310-49
KC Cohen, Lawyer, PC
151 N. Delaware St., Ste. 1106
Indianapolis, IN 46204
317.715.1845
fax 636.8686
kc@esoft-legal.com

## CERTIFICATE OF SERVICE

The undersigned counsel, hereby certifies that a copy of the foregoing was served upon the below listed parties at the address indicated using the Court's ECF filing system.  In addition, copies of the foregoing were delivered to the following parties in interest by the means shown on June 28, 2016:

kc@esoft-legal.com;
hatfield.brenda@gmail.com;
USDCSDECFBK@feiwellhannoy.com;
bankruptcy@unterlaw.com;
Michael.Kulak@unterlaw.com;
joe.mcgonigal@usdoj.gov;
ustpregion10.in.ecf@usdoj.gov;

_____/s/ KC Cohen_____
KC Cohen 04310-49

| Mortgage Co. | Address | Value | Owed | Equity | plan payment (20 yr am based on value) |
|---|---|---|---|---|---|
| PHH | 4509 West Wagonwheel Tr. | $ 70,000.00 | $ 78,000.00 | $ (8,000.00) | $ 461.97 |
| PHH | 30 East Court | $ 77,000.00 | $ 82,455.00 | $ (5,455.00) | $ 508.17 |
| PHH | 2100 Hiawatha Drive | $ 50,000.00 | $ 68,000.00 | $ (18,000.00) | $ 329.98 |
| PHH | 3000 Mojave Drive | $ 50,000.00 | $ 63,500.00 | $ (13,500.00) | $ 329.98 |
| PHH | 4405 West Wgaonwheel Tr. | $ 67,000.00 | $ 63,556.00 | $ 3,444.00 | $ 442.17 |
| PHH | 11600 US 231 South (Romney IN) | $ 75,000.00 | $ 107,843.00 | $ (32,843.00) | $ 494.97 |
| Chase | 1232 Archway Drive | $ 50,000.00 | $ 60,030.00 | $ (10,030.00) | $ 329.98 |
| Chase | 1528 Fairfax Drive | $ 57,445.00 | $ 57,445.00 | $ - | $ 395.97 |
| Chase | 4518 Chisholm Drive | $ 54,543.00 | $ 54,543.00 | $ - | $ 362.98 |
| Chase | 3049 Commanche Tr. | $ 50,000.00 | $ 54,262.00 | $ (4,262.00) | $ 329.98 |
| Green Tree | 2101 East 430 South | $ 80,000.00 | $ 113,378.00 | $ (33,378.00) | $ 527.96 |
| Green Tree | 50 Karin Court | $ 70,000.00 | $ 71,172.00 | $ (1,172.00) | $ 428.97 |
| Seterus | 3360 Chaucer Drive | $ 60,000.00 | $ 70,956.00 | $ (10,956.00) | $ 395.97 |
| Seterus | 1505 Fairfax Drive | $ 50,000.00 | $ 56,300.00 | $ (6,300.00) | $ 329.98 |
| Nationstar | 3322 Commanche Tr. | $ 50,000.00 | $ 57,769.00 | $ (7,769.00) | $ 329.98 |
| ASC | 6818 North 75 East (West Lafayette) | $ 70,000.00 | $ 80,026.00 | $ (10,026.00) | $ 461.97 |
| Ocwen | 27 Goldenrod Court | $ 68,000.00 | $ 73,542.00 | $ (5,542.00) | $ 448.77 |
| | | $ 1,048,988.00 | $ 1,212,777.00 | $(163,789.00) | $ 6,909.75 |

Exhibit "A" to Plan

Liquidation Analysis

Case 15-07473-RLM-11   Doc 121-2   Filed 06/28/16   EOD 06/28/16 16:30:41   Pg 1 of 1

| Address | Rent | Vacancy | MGMT Fees (10% of Gross) | Maintenance (15% of Gross) | Insurance | RE Tax per Month | total operating expenses | Net Cash |
|---|---|---|---|---|---|---|---|---|
| 4509 West Wagonwheel Tr. | $ 950.00 | $ (95.00) | $ 95.00 | $ 142.50 | | $86.83 | $324.33 | $ 530.67 |
| 30 East Court | $ - | $ - | $ - | $ - | | $17.69 | $17.69 | $ (17.69) |
| 2100 Hiawatha Drive | $ 750.00 | $ (75.00) | $ 75.00 | $ 112.50 | | $119.85 | $307.35 | $ 367.65 |
| 3000 Mojave Drive | $ 850.00 | $ (85.00) | $ 85.00 | $ 127.50 | | $87.00 | $299.50 | $ 465.50 |
| 4405 West Wgaonwheel Tr. | $ 850.00 | $ (85.00) | $ 85.00 | $ 127.50 | | $77.65 | $290.15 | $ 474.85 |
| 11600 US 231 South (Romney IN) | $ 975.00 | $ (97.50) | $ 97.50 | $ 146.25 | | $43.06 | $286.81 | $ 590.69 |
| 1232 Archway Drive | $ 725.00 | $ (72.50) | $ 72.50 | $ 108.75 | | $28.63 | $209.88 | $ 442.62 |
| 1528 Fairfax Drive | $ 750.00 | $ (75.00) | $ 75.00 | $ 112.50 | | $121.50 | $309.00 | $ 366.00 |
| 4518 Chisholm Drive | $ 1,200.00 | $ (120.00) | $ 120.00 | $ 180.00 | | $20.36 | $320.36 | $ 759.64 |
| 3049 Commanche Tr. | $ 725.00 | $ (72.50) | $ 72.50 | $ 108.75 | | $98.00 | $279.25 | $ 373.25 |
| 2101 East 430 South | $ 860.00 | $ (86.00) | $ 86.00 | $ 129.00 | | $61.79 | $276.79 | $ 497.21 |
| 50 Karin Court | $ 1,000.00 | $ (100.00) | $ 100.00 | $ 150.00 | | $54.70 | $304.70 | $ 595.30 |
| 3360 Chaucer Drive | $ 850.00 | $ (85.00) | $ 85.00 | $ 127.50 | | $148.18 | $360.68 | $ 404.32 |
| 1505 Fairfax Drive | $ 650.00 | $ (65.00) | $ 65.00 | $ 97.50 | | $86.83 | $249.33 | $ 335.67 |
| 3322 Commanche Tr. | $ 775.00 | $ (77.50) | $ 77.50 | $ 116.25 | | $114.67 | $308.42 | $ 389.08 |
| 6818 North 75 East (West Lafayette) | $ 850.00 | $ (85.00) | $ 85.00 | $ 127.50 | | $138.31 | $350.81 | $ 414.19 |
| 27 Goldenrod Court | $ 825.00 | $ (82.50) | $ 82.50 | $ 123.75 | | $100.18 | $306.43 | $ 436.07 |
| total | $13,585 | -$1,359 | $1,359 | $2,038 | $1,150 | $1,405 | $4,801 | $ 7,425.02 |

cash available for debt service          $ 7,425.02

debt service          $ 6,909.75

net cash          $ 515.27

Exhibit "B" to Plan

Debtor's Projection

**Cash Flow - 12 Month**   Case 15-07473-RLM-11   Doc 121-3   Filed 06/28/16   EOD 06/28/16 16:30:41   Pg 1 of 4

Titan Management Group
Property Groups: Prime Rentals, LLC
Period Beginning: Sep 2015
Period Ending: Apr 2016
Accounting Basis: Cash

| Account Name | Sep 2015 | Oct 2015 | Nov 2015 | Dec 2015 | Jan 2016 | Feb 2016 | Mar 2016 | Apr 2016 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Operating Income & Expense** | | | | | | | | | |
| **Income** | | | | | | | | | |
| **PRIMARY INCOME** | | | | | | | | | |
| Rent Income | 5,209.53 | 11,071.00 | 11,028.42 | 12,102.00 | 10,938.63 | 11,082.00 | 13,342.00 | 13,489.33 | 88,262.91 |
| Delinquent Rent | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 289.04 | 0.00 | 289.04 |
| Late Fee (Income) | 0.00 | 90.00 | 0.00 | 5.00 | 10.00 | 0.00 | 0.00 | 25.00 | 130.00 |
| Resident Legal Income | 0.00 | 121.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 121.00 |
| Pet Fee (Non Refundable) INCOME | 0.00 | 20.00 | 1.33 | 107.33 | 84.00 | 120.00 | 119.67 | 120.00 | 572.33 |
| Utility Income | 152.61 | 284.52 | 273.51 | 166.15 | 235.26 | 17.27 | 21.31 | 21.47 | 1,172.10 |
| Damages at Move-Out (Income) | 0.00 | 0.00 | 0.00 | 110.00 | 120.00 | 0.00 | 0.00 | 0.00 | 230.00 |
| **Total PRIMARY INCOME** | 5,362.14 | 11,586.52 | 11,303.26 | 12,490.48 | 11,387.89 | 11,219.27 | 13,772.02 | 13,655.80 | 90,777.38 |
| **Total Operating Income** | 5,362.14 | 11,586.52 | 11,303.26 | 12,490.48 | 11,387.89 | 11,219.27 | 13,772.02 | 13,655.80 | 90,777.38 |
| **Expense** | | | | | | | | | |
| **OFFICE STAFF EXPENSES** | | | | | | | | | |
| Leasing Bonus | 0.00 | 50.00 | 50.00 | 50.00 | 100.00 | 50.00 | 100.00 | 0.00 | 400.00 |
| **Total OFFICE STAFF EXPENSES** | 0.00 | 50.00 | 50.00 | 50.00 | 100.00 | 50.00 | 100.00 | 0.00 | 400.00 |
| **ADMINISTRATIVE EXPENSES** | | | | | | | | | |
| Management Fees | 0.00 | 1,530.45 | 1,102.98 | 1,220.93 | 1,102.26 | 1,120.20 | 1,204.17 | 1,113.40 | 8,394.39 |
| **Bank Fees** | | | | | | | | | |
| NSF Returned Check (Bounced) | 0.00 | 0.00 | 25.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25.00 |
| NSF Overdraft Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 130.00 | 130.00 |
| **Total Bank Fees** | 0.00 | 0.00 | 25.00 | 0.00 | 0.00 | 0.00 | 0.00 | 130.00 | 155.00 |
| Interest Expense | 0.00 | 0.00 | 0.00 | 0.55 | 0.00 | 0.00 | 0.00 | 0.00 | 0.55 |
| Resident Legal Expense | 0.00 | 84.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45.00 | 225.00 | 354.00 |
| Property Legal | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,000.00 | 1,000.00 | 1,000.00 | 6,000.00 |
| Payment Processing Fee | 0.00 | 0.00 | 4.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4.00 |

Page 1

**Cash Flow - 12 Month**    Case 15-07473-RLM-11    Doc 121-3    Filed 06/28/16    EOD 06/28/16 16:30:41    Pg 2 of 4

| Account Name | Sep 2015 | Oct 2015 | Nov 2015 | Dec 2015 | Jan 2016 | Feb 2016 | Mar 2016 | Apr 2016 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Late Fee (Expense) | 0.00 | 0.00 | 1.87 | 3.75 | 0.00 | 0.00 | 0.00 | 0.00 | 5.62 |
| Total ADMINISTRATIVE EXPENSES | 0.00 | 1,614.45 | 1,133.85 | 1,225.23 | 1,102.26 | 5,120.20 | 2,249.17 | 2,468.40 | 14,913.56 |
| **ADVERTISING/MARKETING** | | | | | | | | | |
| Advertising | 0.00 | 0.00 | 153.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 153.00 |
| Total ADVERTISING/ MARKETING | 0.00 | 0.00 | 153.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 153.00 |
| **TAXES AND INSURANCE** | | | | | | | | | |
| Property Insurance Premium | 0.00 | 737.41 | 124.24 | 643.24 | 605.74 | 605.74 | 605.74 | 605.78 | 3,927.89 |
| Total TAXES AND INSURANCE | 0.00 | 737.41 | 124.24 | 643.24 | 605.74 | 605.74 | 605.74 | 605.78 | 3,927.89 |
| Legal Expenses | 1,700.00 | 0.00 | 0.00 | 0.00 | 0.00 | 975.82 | 0.00 | 0.00 | 2,875.82 |
| **Utilities** | | | | | | | | | |
| **Electric** | | | | | | | | | |
| Electric - Occupied | 195.03 | 125.54 | 91.86 | 33.76 | -33.76 | 0.00 | 0.00 | 0.00 | 412.43 |
| Electric - Vacant | 17.82 | 89.80 | 103.22 | 114.23 | 0.00 | 52.89 | 56.95 | 0.00 | 434.91 |
| Electric - Turnover | 0.00 | 0.00 | 0.00 | 0.00 | 78.65 | 0.00 | 0.00 | 0.00 | 78.65 |
| Total Electric | 212.85 | 215.34 | 195.08 | 147.99 | 44.89 | 52.89 | 56.95 | 0.00 | 925.99 |
| **Gas** | | | | | | | | | |
| Gas - Turnover | 0.00 | 65.94 | 16.07 | 0.00 | 0.00 | 0.00 | 77.47 | 0.00 | 159.48 |
| Gas - Occupied | 31.35 | 6.51 | 267.58 | 78.39 | 39.59 | 21.36 | 106.13 | 21.47 | 572.38 |
| Total Gas | 31.35 | 72.45 | 283.65 | 78.39 | 39.59 | 21.36 | 183.60 | 21.47 | 731.86 |
| **Water, Sewer, & Trash Removal** | | | | | | | | | |
| Water, Sewer & Trash Removal | 32.97 | 62.27 | 190.37 | 69.44 | 59.14 | 0.00 | 0.00 | 27.25 | 441.44 |
| Trash Removal (Utility) | 0.00 | 0.00 | 0.00 | 0.00 | 63.83 | 0.00 | 0.00 | 0.00 | 63.83 |
| Total Water, Sewer, & Trash Removal | 32.97 | 62.27 | 190.37 | 69.44 | 122.97 | 0.00 | 0.00 | 27.25 | 505.27 |
| Total Utilities | 277.17 | 350.06 | 669.10 | 295.82 | 207.45 | 74.25 | 240.55 | 48.72 | 2,163.12 |
| **Repairs & Maint Under $500 (Per Item)** | | | | | | | | | |
| Maintanance Labor | 673.75 | 4,276.25 | 3,767.50 | 3,712.50 | 7,791.23 | 3,127.47 | 1,760.00 | 1,862.50 | 26,971.20 |
| Appliance Repairs | 0.00 | 450.00 | 0.00 | 300.00 | 412.50 | 50.00 | 0.00 | 250.00 | 1,462.50 |
| Appliance Supplies | 0.00 | 0.00 | 51.64 | 0.00 | 90.51 | 43.79 | 0.00 | 165.25 | 351.19 |
| Carpet Cleaning | 0.00 | 95.00 | 110.00 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 325.00 |

Created on 05/24/2016

**Cash Flow - 12 Month**   Case 15-07473-RLM-11    Doc 121-3    Filed 06/28/16    EOD 06/28/16 16:30:41    Pg 3 of 4

| Account Name | Sep 2015 | Oct 2015 | Nov 2015 | Dec 2015 | Jan 2016 | Feb 2016 | Mar 2016 | Apr 2016 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Cleaning Services | 0.00 | 645.00 | 175.00 | 160.00 | -170.00 | 0.00 | 190.00 | 0.00 | 1,000.00 |
| Garage Door Repair | 0.00 | 0.00 | 51.96 | 0.00 | 0.00 | 125.28 | 0.00 | 340.83 | 518.07 |
| General Maintenance - Repairs | 182.84 | 894.71 | 106.19 | 119.38 | 410.76 | 561.84 | 61.50 | 0.00 | 2,337.22 |
| Maintenance Supplies | 5.89 | 268.46 | 18.79 | 389.83 | 312.82 | 334.21 | 375.05 | 1,112.84 | 2,817.89 |
| General Repairs to Turn Apt. | 880.00 | 1,526.25 | 1,237.50 | 1,071.78 | 0.00 | 1,098.75 | 192.50 | 0.00 | 6,006.78 |
| Glass and Screen Repairs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 41.25 | 0.00 | 41.25 |
| Glass and Screen Supplies | 0.00 | 0.00 | 224.24 | 0.00 | 0.00 | 0.00 | 39.35 | 8.90 | 272.49 |
| HVAC Repairs | 0.00 | 0.00 | 0.00 | 206.25 | 385.00 | 0.00 | 0.00 | 0.00 | 591.25 |
| HVAC Supplies | 0.00 | 0.00 | 0.00 | 555.39 | 0.00 | 0.00 | 0.00 | 0.00 | 555.39 |
| Lighting Repair/Install | 0.00 | 0.00 | 0.00 | 0.00 | 55.00 | 0.00 | 0.00 | 0.00 | 55.00 |
| Paint Services - Interior | 68.99 | 2,650.00 | 0.00 | 616.25 | 0.00 | 2,134.00 | 253.00 | 0.00 | 5,722.24 |
| Paint Supplies - Interior | 0.00 | 0.00 | 763.74 | 0.00 | 0.00 | 0.00 | 177.36 | 354.72 | 1,295.82 |
| Plumbing Repair | 0.00 | 0.00 | 0.00 | 0.00 | 750.00 | 0.00 | 0.00 | 0.00 | 750.00 |
| Unit Rehab - Labor | 0.00 | 797.50 | 0.00 | 488.32 | 0.00 | 0.00 | 3,507.50 | 0.00 | 4,773.32 |
| Unit Rehab - Supplies | 0.00 | 0.00 | 0.00 | 0.00 | 395.91 | 912.22 | 1,052.37 | 1,369.57 | 3,730.07 |
| Trash/Garbage Haul-off | 47.75 | 119.50 | 0.00 | 0.00 | 175.00 | 80.00 | 0.00 | 0.00 | 422.25 |
| **Total Repairs & Maint Under $500 (Per Item)** | 1,859.22 | 11,722.67 | 6,506.56 | 7,719.70 | 10,608.73 | 8,467.56 | 7,649.88 | 5,464.61 | 59,998.93 |
| Closing Costs Expensed | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,650.00 | 0.00 | 0.00 | 1,650.00 |
| Miscellaneous | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1.40 | 0.00 | 1.40 |
| **Total Operating Expense** | 3,836.39 | 14,474.59 | 8,636.75 | 9,933.99 | 12,624.18 | 16,943.57 | 10,846.74 | 8,587.51 | 85,883.72 |
| **NOI - Net Operating Income** | 1,525.75 | -2,888.07 | 2,666.51 | 2,556.49 | -1,236.29 | -5,724.30 | 2,925.28 | 5,068.29 | 4,893.66 |
| Total Income | 5,362.14 | 11,586.52 | 11,303.26 | 12,490.48 | 11,387.89 | 11,219.27 | 13,772.02 | 13,655.80 | 90,777.38 |
| Total Expense | 3,836.39 | 14,474.59 | 8,636.75 | 9,933.99 | 12,624.18 | 16,943.57 | 10,846.74 | 8,587.51 | 85,883.72 |
| **Net Income** | 1,525.75 | -2,888.07 | 2,666.51 | 2,556.49 | -1,236.29 | -5,724.30 | 2,925.28 | 5,068.29 | 4,893.66 |
| **Other Items** | | | | | | | | | |
| Appliances (Asset) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -2,900.22 | -2,900.22 |
| Floor Coverings - Carpet (Asset) | -937.57 | 0.00 | -1,375.44 | 0.00 | 0.00 | 0.00 | -1,258.50 | -866.78 | -4,458.29 |

Pg 3 of 4

Created on 05/24/2016

Page 3

## Cash Flow - 12 Month   Case 15-07473-RLM-11   Doc 121-3   Filed 06/28/16   EOD 06/28/16 16:30:41   Pg 4 of 4

| Account Name | Sep 2015 | Oct 2015 | Nov 2015 | Dec 2015 | Jan 2016 | Feb 2016 | Mar 2016 | Apr 2016 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Floor Coverings - Vinyl/Tile (Asset) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1,099.56 | -206.16 | -1,305.72 |
| Gutters/Fascia Replacement (Asset) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -564.00 | 0.00 | -564.00 |
| Roof Replacement (Asset) | 0.00 | 0.00 | 0.00 | 0.00 | -2,117.50 | 0.00 | 0.00 | 0.00 | -2,117.50 |
| Water Heaters(Asset) | 0.00 | -591.25 | -473.88 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1,065.13 |
| Window Replacement (Asset) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -182.19 | -177.40 | -359.59 |
| Garage Door Replacement (Asset) | 0.00 | 0.00 | 0.00 | -1,684.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1,684.00 |
| Net Other Items | -937.57 | -591.25 | -1,849.32 | -1,684.00 | -2,117.50 | 0.00 | -3,104.25 | -4,170.56 | -14,454.45 |
| Cash Flow | 588.18 | -3,479.32 | 817.19 | 872.49 | -3,353.79 | -5,724.30 | -178.97 | 897.73 | -9,560.79 |
| Beginning Cash | 2,600.00 | 5,629.95 | 5,159.40 | 6,268.01 | 8,575.17 | 4,381.38 | 3,642.08 | 193.44 | 2,600.00 |
| Beginning Cash + Cash Flow | 3,188.18 | 2,150.63 | 5,976.59 | 7,140.50 | 5,221.38 | -1,342.92 | 3,463.11 | 1,091.17 | -6,960.79 |
| Actual Ending Cash | 5,629.95 | 5,159.40 | 6,268.01 | 8,575.17 | 4,381.38 | 3,642.08 | 193.44 | 1,196.17 | 1,196.17 |

Created on 05/24/2016

Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:

PRIME RENTALS, LLC,                                    Case No. 15-7473-RLM-11

                    Debtor.

## FIRST IMMATERIAL MODIFICATION TO
## COMBINED SMALL BUSINESS CHAPTER 11 PLAN OF REORGANIZATION
## AND DISCLOSURE STATEMENT

Prime Rentals, LLC, Debtor and Debtor in Possession, ("Debtor"), hereby submits this First

Immaterial Modification to its Combined Small Business Chapter 11 Plan of Reorganization and Disclosure

Statement, ("Plan"), pursuant to Chapter 11 of the United States Bankruptcy Code representing agreed

changes made to the treatment of creditor claim herein. The terms of the Plan shall continue in full force

and effect except as expressly altered herein.

### Class 1          Non Tax Priority Claims

Non tax priority tax claims will be paid in accordance with the priority set forth in the Code. Such

claims are deemed to be impaired under the Plan. At this time there are no known such claims.

### Class 2          Secured Claims

#### 2A          Secured Claim of PHH Mortgage Corporation ("PHH")

PHH has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 4509 Wagon Wheel Tr., Lafayette, IN | $70,000 | Xxxxxx 9588 | Lot Number One Hundred (100) in Rolling Hills Subdivision, Part Two (2), Section One (1), located in Wea Township, Tippecanoe County, Indiana |
| 2100 Hiawatha Drive, Lafayette, IN | $50,000 | xxxxxx 0052 | Legal: Lot Number Forty-One (41) in Tecumseh Second Addition to the City of Lafayette, Indiana, as recorded in Plat Record Book 8, Page 34, in the Office of the Recorder of Tippecanoe County, Indiana. |
| 3000 Mojave Drive, Lafayette, IN | $50,000 | xxxxx 0086 | Legal: Lot Number Five Hundred Eight (508) in Tecumseh Third Addition Part I to the City of Lafayette, Indiana, as recorded in Plat Record Book 8, page 42, in the Office of the Recorder of Tippecanoe County, Indiana. |
| 4405 West Wagon Wheel Tr., Lafayette, IN | $~~55~~,67,000 | Xxxxxx 2073 | LOT NUMBER ONE HUNDRED SEVEN (107) IN ROLLING HILLS SUBDIVISION, PART TWO (2), SECTION ONE (1), LOCATED IN WEA TOWNSHIP, TIPPECANOE COUNTY, INDIANA. |

| 11600 US 231 South (Romney IN) | $75,000 | Xxxxxxx 9398 | Part of the East Half of the Southeast Quarter of Section Nineteen (19), in Township Twenty-one (21) North, Range Four (4) |

PHH shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of PHH") equal to the value of each such property constituting collateral for such claim as shown above, limited to the amount of such creditor's claim. The Debtor shall pay the Allowed Secured Claim of PHH by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year.   Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full. The terms and conditions of the note are hereby incorporated in their entirety.  If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein. The debtor shall pay all real estate taxes and insurance premiums when due and shall provide proof of such payment to this creditor upon request. As such, there shall be no escrow of taxes or insurance maintained by this creditor. Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

PHH Mortgage Corporation
Attn.: BK Payment Processing
Mail Stop SBRP, One Mortgage Way
Mt. Laurel, NJ 08054

PHH shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of PHH. The PHH claim is deemed to be impaired by the Plan.

## 2B    Secured Claim of Bayview Loan Servicing ("BAYVIEW")

BAYVIEW has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---------|-------|----------------|-------------------|
| 1232 Archway Drive, Lafayette, IN | $59,000 | xxxxxx  1777 | Lot Number Four Hundred Twenty-Two (422) in the Revised Plat of Southlea Addition, Part Two (2), to the City of Lafayette, Indiana, as recorded in Plat Record Book 7, Page 22, in the Office of the Recorder of Tippecanoe County, Indiana. |

2

| 1528 Fairfax Drive, Lafayette, IN | $69,000 | Xxxxxxx 1868 | LOT NUMBERED 18 IN LINDALE ADDITION, PART ONE, LOCATED IN WEA TWONSHIP, TIPPECANOE COUNTY, INDIANA. |
|---|---|---|---|
| 4518 Chisholm Drive, Lafayette, IN | $70,000 | Xxxxxxx 2011 | Lot number Fifty-four (54) in Rolling Hills Subdivision Part Two, Section Two, as platted upon part of the Northeast Quarter of Section Seventeen (17), Township Twenty-two (22) North, Range Four (4) West, which plat is recorded in Plat Book 13, Page 45 A, in the records of the Recorder of Tippecanoe County, Indiana. Located in Wea Township, Tippecanoe County, Indiana. |
| 3049 Commanche Tr., Lafayette, IN | $59,794.75 | Xxxxxx 1982 | Lot Number Two Hundred Forty-eight (248) in Tecumseh Third Addition, Part One (1) to the City of Lafayette, Indiana, |

BAYVIEW shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of BAYVIEW") equal to the value of each such property constituting collateral for such claim as shown above, limited to the amount of such creditor's claim. The Debtor shall pay the Allowed Secured Claim of BAYVIEW by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year.  Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full.  The terms and conditions of the note are hereby incorporated in their entirety. If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein. The debtor shall pay all real estate taxes and insurance premiums when due and shall provide proof of such payment to this creditor upon request.  As such, there shall be no escrow of taxes or insurance maintained by this creditor. Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

> Bayview Loan Servicing
> 4425 Ponce DeLeon Blvd., 5th Floor
> Coral Gables, FL 33146

BAYVIEW shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of BAYVIEW .  The BAYVIEW claim is deemed to be impaired by the Plan.

3

**2C____Secured Claim of Ditech Financial, f/k/a Green Tree ("Ditech")**

Ditech has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 2101 East 430 South, Lafayette, IN | $80,000 | xxxxxx 0349 | LOT NUMBER THIRTY-EIGHT (38) IN HIGH RIDGE SUBDIVISION, PART ONE (1), SECTION "F", ALSO, A PART OF THE NORTHWEST QUARTER OF SECTION 15, TOWNSHIP 22 NORTH, RANGE 4 WEST, WEA TOWNSHIP, TIPPECANOE COUNTY, INDIANA DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWESTERN CORNER OF LOT # 38 IN HIGH RIDGE SUBDIVISION, PART I, SECTION "F", AS RECORDED IN PLAT BOOK 13, PAGE 13, OFFICE OF THE RECORDER, TIPPECANOE COUNTY, INDIANA, THENCE SOUTH 87 DEGREES 40 MINUTES 00 SECONDS EAST, ALONG THE SOUTHERN LINE OF LOT NUMBER THIRTY-EIGHT (38), 120.21 FEET TO THE SOUTHEASTERN CORNER OF SAID LOT 38, THENCE 2 DEGREES 20 MINUTES 00 SECONDS WEST 217.80 FEET, THENCE NORTH 87 DEGREES 40 MINUTES 00 SECONDS WEST, 110.03 FEET, THENCE NORTH 00 DEGREES 20 MINUTES 30 SECONDS WEST, 218.04 FEET TO THE POINT OF BEGINNING, CONTAINING0.58 OF AN ACRE, MORE OR LESS. |
| 50 Karin Court, Lafayette, IN | $76,856.79 | Xxxxxxxx 2235 | LOT NUMBER THREE HUNDRED EIGHT (308) IN THE LINDALE ADDITION PART I, AS PER PLAT THEREOF RECORDED IN THE OFFICE OF THE RECORDER OF TIPPECANOE COUNTY, INDIANA |

Ditech shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of Green Tree") equal to the value of each such property constituting collateral for such claim as shown above, limited to the amount of such creditor's claim. The Debtor shall pay the Allowed Secured Claim of Ditech by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year. Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full. The terms and conditions of the note are hereby incorporated in their entirety. If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties'' pre-petition shall control, except as modified herein. The debtor shall pay all real estate taxes and insurance premiums when due and shall provide proof of such payment to this creditor upon request. As such, there shall be no escrow of taxes or insurance maintained by this creditor. Payments to this creditor shall be made to the following address, and if mailed by the Debtor to

4

such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor unless this creditor delivers a written notice at least 30 days in advance of any change in such address:

> Ditech Financial LLC,  f/k/a Green Tree Servicing, LLC
> P.O. Box 0049
> Palatine, IL 60055-0049

Ditech shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of Green Tree.  The Ditech claim is deemed to be impaired by the Plan.

### 2D      Secured Claim of Nationstar ("NATIONSTAR")

NATIONSTAR has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 3322 Commanche Tr., Lafayette, IN | $53,500 | xxxxxx 2312 | Lot numbered One Hundred Fifty-Six (156) in Pipers Glen Addition, Fourth Section, Revised, to the City of Lafayette, Indiana, as recorded plat record book  13, page 33, in the Office of the recorder of Tippecanoe County, Indiana. |

NATIONSTAR shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of NATIONSTAR") equal to the value of each such property constituting collateral for such claim as shown above, limited to the amount of such creditor's claim.  The Debtor shall pay the Allowed Secured Claim of NATIONSTAR by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year.   Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full.  The terms and conditions of the note are hereby incorporated in their entirety.  If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein. The debtor shall pay all real estate taxes and insurance premiums when due and shall provide proof of such payment to this creditor upon request.  As such, there shall be no escrow of taxes or insurance maintained by this creditor.   Further, Debtor shall provide proof of insurance within thirty (30) days of the filing of this agreed immaterial modification to Creditor's Counsel.  Payments to this creditor shall be made

to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

> Nationstar
> PO Box 650783
> Dallas TX 75265

With respect to the property commonly known as 3322 Comanche Trail, Lafayette, IN 47909, the servicer on the loan in question is Caliber Home Loans Inc. As such, payments shall be made to the following address:

> Caliber Home Loans
> 13801 Wireless Way
> Oklahoma City, OK 73134

NATIONSTAR shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of NATIONSTAR. The NATIONSTAR claim is deemed to be impaired by the Plan.

<u>2E      Secured Claim of Ocwen ("OCWEN")</u>

OCWEN has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 27 Goldenrod Court, Lafayette, IN | $77,541.61 | xxxxxx 5970 | Lot numbered One Hundred Twenty- four (124) in Prairie Oaks Subdivison, phase III, per the plat thereof dated December 8, 1992, recorded December 17, 1992 in Plat cabinet D, Slide 158, as Tippecanoe County, Indiana. Located in Wea Township, Tippecanoe County, Indiana. |

OCWEN shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of OCWEN") equal to the value of each such property constituting collateral for such claim as shown above, limited to the amount of such creditor's claim. The Debtor shall pay the Allowed Secured Claim of OCWEN by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year. Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full. The terms and conditions of the note are hereby incorporated in their entirety. If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein. The debtor shall pay all real estate taxes and insurance premiums when due and shall provide proof of such payment to

6

this creditor upon request. As such, there shall be no escrow of taxes or insurance maintained by this creditor. Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

> Ocwen Loan Servicing
> PO Box 9001719
> Louisville KY 40290

OCWEN shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of OCWEN. The OCWEN claim is deemed to be impaired by the Plan.

### 2F    Secured Claim of Seterus ("SETERUS")

SETERUS has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 3360 Chaucer Drive, Lafayette, IN | $79,016.74 | xxxxxx 8253 | Lot numbered Thirty-nine (39) in Pipers Glen Addition, Third Section to the City of Lafayette, Indiana, as recorded in Plat Record Book 13, Page 17, in the Office of the Recorder of Tippecanoe County, Indiana. |
| 1505 Fairfax Drive, Lafayette, IN | $58,806.35 | Xxxxxx 9332 | Lot numbered three hundred thirty-three (333) in Lindale Addition, Part 1 to the City of Lafayette, Indiana, Located in Wea Township, Tippecanoe County, Indiana. |
| 30 E Court, Lafayette, In | $77,000 | xxxxxx 4354 | Lot Numbered Three Hundred Ninety Six (396) in the Revised Plat of Southlea Addition Part Two (2) to the City of Lafayette, Indiana, as recorded in Plat Book 7, Page 22, in the Office of the Recorder of Tippecanoe County, Indiana: Located in Fairfield Township, Tippecanoe County, Indiana. |

SETERUS shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of SETERUS") equal to the amount of its claim. The Debtor shall pay the Allowed Secured Claim of SETERUS by delivery of a new Promissory Note in the (the "Note"), which Note provides for amortization of 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum and twelve monthly payments per year. Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full. The terms and conditions of the note are hereby incorporated in their entirety. If no new Note is offered by the creditor, the terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein. The debtor

shall pay all real estate taxes and insurance premiums when due and shall provide proof of such payment to this creditor upon request. As such, there shall be no escrow of taxes or insurance maintained by this creditor. Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor:

> Federal National Mortgage Association
> c/o Seterus, Inc., BK Dept.
> P.O. Box 1047
> Hartford, CT 06143

SETERUS shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of SETERUS. The SETERUS claim is deemed to be impaired by the Plan.

### 2G    Secured Claim of America's Service Company ("ASC")

ASC has a claim secured by a mortgage on the following properties:

| Address | Value | Account Number | Legal Description |
|---|---|---|---|
| 6818 North 75 East West Lafayette, IN | $89,000 | xxxxxx 5606 | A part of the West half of the Northeast Quarter of Section Twenty (20), Township Twenty-four (24) North, Range Four (4) West, Tippecanoe Township, Tippecanoe County, Indiana, more completely described as follows, to-wit: Beginning at a point on the centerline of a county gravel road and the east line of the West half of the Northeast Quarter of said Section 20, Township 24 North, Range 4 West, a distance of 1590.2 feet North of the Southeast corner of the West half of the Northeast Quarter of said section; thence North 88 degrees 14 minutes West a distance of 530.75 feet to an iron pipe on the easterly right of way of State Road I-65; thence North 27 degrees 58 minutes West along said right of way a distance of 255.65 feet to an iron pipe; thence South 88 degrees 14 minutes East a distance of 658.35 feet to a railroad spike on the east line of the West half of the Northeast Quarter of said section; thence South 0 degrees 21 minutes West along said east line a distance of 222.0 feet to a railroad spike and the place of beginning, containing 3.0 acres, more or less. |

ASC shall be deemed to have an Allowed Secured Claim, (the "Allowed Secured Claim of ASC") equal to the amount of its claim. The Debtor shall pay the Allowed Secured Claim of ASC by amortizing 100% of the principal amount of the Allowed Secured Claim over 20 years with interest at 5% per annum

and twelve monthly payments per year.   Payments shall commence thirty days after the Effective Date and continue until the Allowed Secured Claim is paid in full.  The terms and conditions of the mortgage and note are hereby incorporated in their entirety.  The terms and conditions of the note entered between the parties' pre-petition shall control, except as modified herein.  The debtor shall pay all real estate taxes and insurance premiums when due and shall provide proof of such payment to this creditor upon request. As such, there shall be no escrow of taxes or insurance maintained by this creditor. Payments to this creditor shall be made to the following address, and if mailed by the Debtor to such address accompanied by the account numbers shown above, shall be deemed accepted by such creditor unless this creditor delivers a written notice at least 30 days in advance of any change in such address:

America's Servicing Company
1 Home Campus
Attn;  Bankruptcy Payment Processing MAC #X2302-04C
Des Moines, IA 50328

ASC shall be deemed to have a continuing lien on its collateral which lien shall be released upon payment in full of the Allowed Secured Claim of ASC.  The ASC claim is deemed to be impaired by the Plan.

### 2H    Secured Claim of Tippecanoe County Treasurer ("TCT")

TCT has a claim secured by a statutory lien on each individual property owned by the Debtor. Such claim shall be paid by equal monthly installment commencing on the Effective Date sufficient to fully amortize the TCT claim over five years with interest at 5%.  Such claim shall include any amount advanced by any other secured creditor treated by this Plan for real estate taxes.

### XI.    Release of Judgment Liens

Several creditors commenced actions seeking to foreclosure mortgages against the real property assets of the Debtor and many obtained judgments foreclosing those mortgages.   As such, any such creditor possesses a statutory lien against all real estate owned by the Debtor.  While the Plan does not seek to obtain an Order Avoiding the judgment lien of any such creditor under 11 USC 522(f), for the reason that the Debtor is not entitled to claim exemptions, the entry of a Confirmation Order is intended to have the same effect. Entry of a Confirmation Order, among other things, shall constitute a finding of the

9

Court that the values set forth in this Plan for each real property asset of this estate are the values for each such parcel for purposes of determining whether there is any equity in any parcel. To the extent there is no equity based on subtracting the secured claim from the value of each parcel shown in the attached Exhibit "A", the Confirmation Order shall, in accordance with 11 USC 105, Fed Rule Bankr. Pro 7070 and Civ Rule Pro 70, be an Order of the Court divesting any lien claim, including judgment liens entered pursuant to IC 32-28 et seq., of any person including the creditors whose claims are treated in the Plan. A copy of the Confirmation Order entered by the Court in this matter may be recorded in order to document the finding by this Court that such claims are released as to the real estate described in Schedule A of the Schedules filed herein and the judgment claims of creditors described in Class 2 above.

Dated: August 26, 2016,

Prime Rentals, LLC

_____/s/ Brenda Hatfield_____
By: Brenda Hatfield, its Managing Member

Attorney for the Debtor:
KC Cohen 04310-49
KC Cohen, Lawyer, PC
151 N. Delaware St., Ste. 1106
Indianapolis, IN 46204
317.715.1845
fax 636.8686
kc@esoft-legal.com

**CERTIFICATE OF SERVICE**

The undersigned counsel, hereby certifies that a copy of the foregoing was served upon the below listed parties at the address indicated using the Court's ECF filing system.  In addition, copies of the foregoing were delivered to the following parties in interest by the means shown on August 26, 2016:

kc@esoft-legal.com;
hatfield.brenda@gmail.com;
USDCSDECFBK@feiwellhannoy.com;
bankruptcy@unterlaw.com;
Michael.Kulak@unterlaw.com;
joe.mcgonigal@usdoj.gov;
ustpregion10.in.ecf@usdoj.gov;

_____/s/ KC Cohen_____
KC Cohen 04310-49

Case 15-07473-RLM-11     Doc 170-1     Filed 08/26/16     EOD 08/26/16 15:42:28     Pg 1 of 1

| Mortgage Co. | Address | Value | Owed | Equity | plan payment (20 yr am at 5% based on value) |
|---|---|---|---|---|---|
| PHH | 4509 West Wagonwheel Tr. | $ 70,000.00 | $ 88,725.99 | $ (18,725.99) | $ 461.97 |
| PHH | 30 East Court | $ 77,000.00 | $ 93,402.51 | $ (16,402.51) | $ 508.17 |
| PHH | 2100 Hiawatha Drive | $ 50,000.00 | $ 77,581.88 | $ (27,581.88) | $ 329.98 |
| PHH | 3000 Mojave Drive | $ 50,000.00 | $ 72,630.56 | $ (22,630.56) | $ 329.98 |
| PHH | 4405 West Wagonwheel Tr. | $ 55,000.00 | $ 72,084.30 | $ (17,084.30) | $ 442.17 |
| PHH | 11600 US 231 South (Romney IN) | $ 75,000.00 | $ 123,913.69 | $ (48,913.69) | $ 494.97 |
| Chase | 1232 Archway Drive | $ 59,000.00 | $ 65,044.36 | $ (6,044.36) | $ 329.98 |
| Chase | 1528 Fairfax Drive | $ 69,000.00 | $ 62,953.89 | $ 6,046.11 | $ 395.97 |
| Chase | 4518 Chisholm Drive | $ 59,665.11 | $ 59,665.11 | $   - | $ 393.76 |
| Chase | 3049 Commanche Tr. | $ 59,794.75 | $ 59,794.75 | $   - | $ 394.62 |
| Green Tree | 2101 East 430 South | $ 80,000.00 | $ 126,294.06 | $ (46,294.06) | $ 527.96 |
| Green Tree | 50 Karin Court | $ 75,856.79 | $ 75,856.79 | $   - | $ 511.16 |
| Seterus | 3360 Chaucer Drive | $ 79,016.74 | $ 79,016.74 | $   - | $ 521.48 |
| Seterus | 1505 Fairfax Drive | $ 58,806.35 | $ 58,806.35 | $   - | $ 388.10 |
| Nationstar | 3322 Commanche Tr. | $ 53,500.00 | $ 57,769.00 | $ (4,269.00) | $ 353.08 |
| ASC | 6818 North 75 East (West Lafayette) | $ 89,000.00 | $ 88,700.79 | $ 299.21 | $ 587.36 |
| Ocwen | 27 Goldenrod Court | $ 77,541.61 | $ 77,541.61 | $   - | $ 511.74 |
|  |  | **$ 1,138,181.35** | **$ 1,339,782.38** | **$(201,601.03)** | **$ 7,482.45** |

*this claim is amortized using 5.25%

Exhibit "A" to Immaterial Modification

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:             |

**PRIME RENTALS, LLC,**    |       **Case No. 15-7473-RLM-11**

     Debtor.      |

_____|_____

### SECOND IMMATERIAL MODIFICATION TO
### COMBINED SMALL BUSINESS CHAPTER 11 PLAN OF REORGANIZATION
### AND DISCLOSURE STATEMENT

Prime Rentals, LLC, Debtor and Debtor in Possession, ("Debtor"), hereby submits this Second Immaterial Modification, (the "Second Immaterial Modification") to its Combined Small Business Chapter 11 Plan of Reorganization and Disclosure Statement, ("Plan"), pursuant to Chapter 11 of the United States Bankruptcy Code representing agreed changes made to the treatment of creditor claim herein. The terms of the Plan shall continue in full force and effect except as expressly altered herein.

The attached Exhibit "A" replaces the one tendered with the First Immaterial Modification to its Combined Small Business Chapter 11 Plan of Reorganization and Disclosure Statement, (the "First Immaterial Modification")[docket entry 170].

Dated: September 16, 2016,

Prime Rentals, LLC

_____/s/ Brenda Hatfield _____
By: Brenda Hatfield, its Managing Member

Attorney for the Debtor:
KC Cohen 04310-49
KC Cohen, Lawyer, PC
151 N. Delaware St., Ste. 1106
Indianapolis, IN 46204
317.715.1845
fax 636.8686
kc@esoft-legal.com

**CERTIFICATE OF SERVICE**

The undersigned counsel, hereby certifies that a copy of the foregoing was served upon the below listed parties at the address indicated using the Court's ECF filing system. In addition, copies of the foregoing were delivered to the following parties in interest by the means shown on September 16, 2016:

kc@esoft-legal.com;
hatfield.brenda@gmail.com;
USDCSDECFBK@feiwellhannoy.com;
bankruptcy@unterlaw.com;
Michael.Kulak@unterlaw.com;
joe.mcgonigal@usdoj.gov;
jmcnair@indylegal.com;
lwambsganss@indylegal.com;
bankruptcy@doylelegal.com;
loubknotices@fenton-mcgarvey.com;
amps@manleydeas.com;
ustpregion10.in.ecf@usdoj.gov;


_____/s/ KC Cohen_____
KC Cohen 04310-49

2

Case 15-07473-RLM-11    Doc 185-1    Filed 09/16/16    EOD 09/16/16 11:48:41    Pg 1 of 1

| Mortgage Co. | Address | Value | Owed | Equity | plan payment (20 yr am at 5% based on value) |
|---|---|---|---|---|---|
| PHH | 4509 West Wagonwheel Tr. | $ 70,000.00 | $ 88,725.99 | $ (18,725.99) | $ 461.97 |
| Seterus | 30 East Court | $ 77,000.00 | $ 93,402.51 | $ (16,402.51) | $ 508.17 |
| PHH | 2100 Hiawatha Drive | $ 50,000.00 | $ 77,581.88 | $ (27,581.88) | $ 329.98 |
| PHH | 3000 Mojave Drive | $ 50,000.00 | $ 72,630.56 | $ (22,630.56) | $ 329.98 |
| PHH | 4405 West Wgaonwheel Tr. | $ 67,000.00 | $ 72,084.30 | $ (5,084.30) | $ 442.17 |
| PHH | 11600 US 231 South (Romney IN) | $ 75,000.00 | $ 123,913.69 | $ (48,913.69) | $ 494.97 |
| bayview | 1232 Archway Drive | $ 59,000.00 | $ 65,044.36 | $ (6,044.36) | $ 329.98 |
| bayview | 1528 Fairfax Drive | $ 69,000.00 | $ 62,953.89 | $ 6,046.11 | $ 395.97 |
| bayview | 4518 Chisholm Drive | $ 59,665.11 | $ 59,665.11 | $ - | $ 393.76 |
| bayview | 3049 Commanche Tr. | $ 59,794.75 | $ 59,794.75 | $ - | $ 394.62 |
| Green Tree | 2101 East 430 South | $ 80,000.00 | $ 126,294.06 | $ (46,294.06) | $ 527.96 |
| Ditech | 50 Karin Court | $ 76,856.79 | $ 76,856.79 | $ - | $ 507.22 |
| Seterus | 3360 Chaucer Drive | $ 79,016.74 | $ 79,016.74 | $ - | $ 521.48 |
| Seterus | 1505 Fairfax Drive | $ 58,806.35 | $ 58,806.35 | $ - | $ 388.10 |
| Nationstar | 3322 Commanche Tr. | $ 53,500.00 | $ 57,769.00 | $ (4,269.00) | $ 353.08 |
| ASC | 6818 North 75 East (West Lafayette) | $ 89,000.00 | $ 88,700.79 | $ 299.21 | $ 587.36 |
| Ocwen | 27 Goldenrod Court | $ 77,541.61 | $ 77,541.61 | $ - | $ 511.74 |
| | | $1,151,181.35 | $ 1,340,782.38 | $(189,601.03) | $ 7,478.51 |

*this claim is amortized using 5.25%

Exhibit "A" to Immaterial Modification